WILLIAM C. EVERS III, Plaintiff-Appellant, v. COLLINSVILLE TOWN-SHIP *et al.*, Defendants-Appellees.

Fifth District    No. 5—94—0040

Opinion filed March 8, 1995.

William C. Evers III, of Collinsville, appellant *pro se.*

Frank R. Hudak, of Collinsville, for appellees.

PRESIDING JUSTICE MAAG delivered the opinion of the court:
Plaintiff appeals from a circuit court order denying injunctive relief and granting summary judgment in favor of defendants.

On December 1, 1993, plaintiff, William Evers, filed a complaint seeking a court order prohibiting the Collinsville Township Board of Trustees (Board) from constructing a new township office building until the project had voter approval in the next general election. On December 8, 1993, plaintiff moved to reduce the time to file a responsive pleading and requested a pretrial conference.

Thereafter, plaintiff amended the complaint, seeking a court order voiding the construction contract and enjoining the Board from making any payments to the contractor. The parties filed cross-motions for summary judgment. On January 5, 1994, the trial court held a hearing on the motions. Plaintiff called one witness, township supervisor Terry Allan.

On January 6, 1994, the court issued a written order in favor of defendants and against plaintiff. The plaintiff appeals this order.

On appeal, plaintiff contends:

(1) The trial court erred in holding that the Township Board of Trustees exercises the corporate authority of a township;

(2) The trial court erred in holding that the Town Hall Act (60 ILCS 30/0.1 through 2 (West 1992)) is applicable only when the township must issue bonds to build a town hall; and

(3) The trial court erred in holding that plaintiff's claim was barred by the doctrine of *laches.*

In February 1992, the Collinsville Township Board of Trustees began considering the need for a new township office building. During the period between February 1992 and April 1993, the Board voted unanimously to acquire an open lot and an abandoned building adjacent to the then-current township office building. The Board further authorized the demolition of the empty building and the execution of a contract for architectural services for the construction of a new township office building. In May and June of 1993, the Board, now with two new trustees, voted unanimously (with one new trustee

voting present) to acquire another adjoining lot for the new building and to lease township office space during construction of the new township building. During this period, the township held two annual town meetings, in April 1992 and April 1993, pursuant to statute.

On November 22, 1993, plaintiff filed five petitions containing 88 signatures, demanding a referendum on the issue of whether or not the township should issue bonds or borrow money for a new township building.

At the Board meeting on November 30, 1993, plaintiff asked that the Board consider the petitions. Plaintiff further advised the Board that he would file a lawsuit if it contracted for construction of a new township building. Thereafter, on a 3-2 vote, the Board authorized township supervisor Terry Allan to execute the proposed contract for the sum of $353,509. They also voted to appropriate $400,000 for the new building out of tax moneys already received so that no borrowing of money would be necessary. Immediately after the meeting, Allan executed the construction contract. Plaintiff filed this lawsuit the next day. In the interim, construction began on the new building.

Plaintiff first contends that the trial court erred in holding that the township board of trustees exercises the corporate authority for the Collinsville Township. Plaintiff argues that the term "town" in section 4—2 of the Township Law of 1874 (60 ILCS 5/4—2 (West 1992)) includes only the town electors acting in a town meeting. Thus, plaintiff argues, the town electors are the town's only corporate authorities vested with the necessary power to construct a new township building.

We disagree. Our supreme court has previously defined corporate authority as "those municipal officers who are either directly elected by such population, or appointed in some mode to which they have given their assent." *Harward v. St. Clair & Monroe Levee & Drainage Co.* (1869), 51 Ill. 130, 136 (drainage commissioners appointed by statute were not corporate authorities under Illinois Constitution); *Cornell v. People ex rel. Walsh* (1883), 107 Ill. 372, 380 (park board members appointed by statute were not corporate authorities under Illinois Constitution); *People ex rel. Neil v. Knopf* (1897), 171 Ill. 191, 200, 49 N.E. 424, 426 (elected county board was corporate authority under Township Law of 1874, consistent with Illinois Constitution).

Contrary to plaintiff's argument, there is clearly room within the Township Law of 1874 for two distinct bodies, the Board and the electors, to represent the corporate authority of the town. In *Town of Kankakee v. Kankakee & Indiana R.R. Co.* (1885), 115 Ill. 88, 90, 3 N.E. 741, 742, the court held that under the township organization system no officer or board represents the corporate authority of the

town. The court noted, however, that if the board or an officer is authorized to represent the town's corporate authority by statute, that statute is the measure of its authority. *Town of Kankakee*, 115 Ill. at 90, 3 N.E. at 742.

The court expanded on this in *People ex rel. Neil v. Knopf* (1897), 171 Ill. 191, 49 N.E. 424. In *Knopf*, the court stated:

> "It is true that under our system of township organization there is no officer or board properly representing the corporate authorities of a town; but the electors represent the corporate authorities when assembled in town meeting, as held in *Town of Kankakee v. Kankakee and Indiana Railroad Co.* [(1885),] 115 Ill. 88[, 3 N.E. 741]. But as was held in *People v. Salomon* [(1869)], 51 Ill. 37, while, under the constitution, the authority to levy and collect taxes must be limited to corporate authorities, yet there is no prohibition against the creation by the legislature of other corporate authority, and when created, [the endowment of] the same with all the faculties and attributes of other pre-existing corporate authorities." *Knopf*, 171 Ill. at 200, 49 N.E. at 426.

The *Knopf* court went on to hold that the people of the town, by adoption of township organization, made the county board the corporate authority for the town and thereby empowered the board to determine the necessary tax levies to provide for town expenses. *Knopf*, 171 Ill. at 202, 49 N.E. at 427.

Clearly, the court recognized the possibility of the legislature amending the Township Law of 1874 to create in the Board a corporate authority to act for the town. Nearly a century later, this has come to pass. In modern amendments to the Township Law of 1874, the legislature has specifically provided for the creation of a township board of trustees (60 ILCS 5/13—1 (West 1992)) and provided the Board with broad corporate powers to carry out its duty (60 ILCS 5/4—2 (West 1992)). The legislature also granted to the Board some corporate powers previously possessed by the town electors in their enumerated powers found in sections 4—3 through 4—32 of article IV of the Act. (60 ILCS 5/4—3, 4—32 (West 1992).) The town electors' enumerated powers do not include the authority to construct a town hall or township building. Nor do they include powers that are now vested by statute in the Board, such as raising money by taxation (60 ILCS 5/13—14 (West 1992)) and expenditure of township funds (60 ILCS 5/13—20 (West 1992)). An enumeration of one or more specific items in a statute excludes all other things that are not mentioned in the statute. *Shamel v. Shamel* (1954), 3 Ill. 2d 425, 431, 121 N.E.2d 819, 823; *Crawford v. Love* (1993), 243 Ill. App. 3d 977, 980, 614 N.E.2d 50, 52.

The other cases cited by plaintiff to support his position are not on point. In *Gregg v. Town of Bourbonnais* (1945), 327 Ill. App. 253, 64 N.E.2d 106, the court held that the town supervisor did not have the corporate authority to authorize expenditure of town funds for an engineering contract without prior approval of the town electors at a town meeting. (*Gregg*, 327 Ill. App. at 265, 64 N.E.2d at 111.) In 1973, the legislature effectively overruled this case by giving a township board of trustees exclusive power over the expenditure of township funds. (Ill. Rev. Stat. 1973, ch. 139, par. 126.10 (now see 60 ILCS 5/13—20 (West 1992)).) *Anders v. Town of Danville* (1964), 45 Ill. App. 2d 104, 195 N.E.2d 412, held that the electors had the power to license and regulate junk dealers. (*Anders*, 45 Ill. App. 2d at 110, 195 N.E.2d at 416.) This power is one of those enumerated powers left to the town electors by the legislature. (60 ILCS 5/4—13 (West 1992).) In *Johnson v. City of Evanston* (1976), 39 Ill. App. 3d 419, 424-25, 350 N.E.2d 70, 74-75, the court held that general assistance was a public code function, exercisable by the town supervisor and not the board of town auditors. This decision did not involve an exercise of a town's corporate powers.

■ We conclude that the legislature contemplated in the creation of the township board of trustees another corporate authority endowed with all the same facilities and attributes of the electors, the preexisting corporate authority. By adopting township organization, the people of Collinsville made the board of trustees the corporate authority for their town and thereby empowered the Board with the authority to exercise the corporate powers of the town as provided in section 4—2 of the Act.

Since the Board may exercise the corporate powers enumerated in section 4—2, the trial court's finding that the term "town" in section 4—2 includes the Board is correct. Thus, the town supervisor acting in his capacity of chief executive officer of the township (60 ILCS 5/11—3(a) (West 1992)) had the specific legislative authority to contract for the construction of a town hall. 60 ILCS 5/4—2(c) (West 1992).

Since we find that the Board enjoyed statutory authority to build a township hall pursuant to section 4—2(c) of the Township Law of 1874, we need not address plaintiff's complaint that the court erred in its interpretation of the Town Hall Act (60 ILCS 30/0.01 through 2 (West 1992)).

Finally, plaintiff contends that the trial court erroneously employed the doctrine of *laches* to bar his claim.

■ *Laches* is a neglect or omission to assert a right, taken in conjunction with a lapse of time and other circumstances causing

prejudice to an adverse party, which operates to bar relief in equity. (*Meyers v. Kissner* (1992), 149 Ill. 2d 1, 12, 594 N.E.2d 336, 340.) Whether *laches* applies depends on the particular facts of each case. (*Richter v. Collinsville Township* (1981), 97 Ill. App. 3d 801, 804, 423 N.E.2d 549, 552.) The determination of the existence of *laches* is left to the sound discretion of the trial court, and its decision will not be overturned unless there is a clear showing of an abuse of discretion. *Richter*, 97 Ill. App. 3d at 804-05, 423 N.E.2d at 552-53.

For a court to bar a suit on the grounds of *laches*, the following facts must be disclosed:

"(1) Conduct on the part of the defendant giving rise to the situation of which complaint is made and for which the complainant seeks a remedy; (2) delay in asserting the complainant's rights, the complainant having had notice or knowledge of defendant's conduct and the opportunity to institute a suit; (3) lack of knowledge or notice on the part of defendant that the complainant would assert the right on which he bases his suit[;] and (4) injury or prejudice to the defendant in the event relief is accorded to the complainant or the suit is held not to be barred." *Pyle v. Ferrell* (1958), 12 Ill. 2d 547, 553, 147 N.E.2d 341, 344.

■ In the instant case, the trial court found that the township office building project began in February 1992. Plaintiff first informed the Board of his objection and his intent to file a lawsuit on November 30, 1993. The trial court found that prior to plaintiff's notice, two annual town meetings were held in April of 1992 and 1993, during which 25 interested electors, including plaintiff, could have requested a referendum on the project.

Plaintiff argues that *laches* is inapplicable because the Board would not have suffered any injury or prejudice in the event the trial court enjoined construction until after a referendum in the next general election scheduled for November 8, 1994. We disagree.

The trial court is obliged to consider the injury or inconvenience that may result to the defendant, especially where the defendant is a public body, or to the public in general if the injunction is granted. (*Ames v. Schlaeger* (1944), 386 Ill. 160, 166, 53 N.E.2d 937, 940; *G.H. Sternberg & Co. v. Cellini* (1973), 16 Ill. App. 3d 1, 6, 305 N.E.2d 317, 321.) Here, the record indicates that construction had begun on the project by the time the trial court ruled on the merits of this lawsuit. The basement had been dug. The basement walls had been constructed. The footings and foundations had been poured. To stop construction and order the partially completed project to sit idle through 11 months of winter and summer until the November 8, 1994, election would have clearly resulted in injury to the defendants and to the general public.

The facts present in this case meet the requirements for *laches* and demonstrate conclusively that it would be inequitable to grant injunctive relief to plaintiff, considering the long delay in asserting his rights, the lack of notice to defendants of plaintiff's objection, and the injury to defendants and the general public by delaying construction of the partially completed building. We conclude that the trial court did not abuse its discretion in finding that *laches* barred plaintiff's claim.

Accordingly, the trial court is affirmed.

Affirmed.

LEWIS and GOLDENHERSH, JJ., concur.