Fourth Division

June 19, 1997

No. 1-95-3184, 1-96-0226, Cons.

CHARLES S. BALDACCHINO; and ) APPEAL FROM THE 

ROBERT M. SROKA, individually and   ) CIRCUIT COURT OF

on behalf of a majority of the ) COOK COUNTY.

Electors of the Town of Maine, )

)

Plaintiffs-Appellants, )

)

v. ) 

)

MARK THOMPSON, individually and as )

Supervisor of the Town of Maine; )

CAROL TESCHKY, individually and as )

Trustee of the Town of Maine; ROBERT )

PROVENZANO, individually and as )

Trustee of the Town of Maine; PAMELA ) 

ANDERSON, Administrator of the Town of ) 

Maine; and GARY WARNER, individually ) 

and as Town Clerk, ) HONORABLE

) EDWIN M. BERMAN,

Defendants-Appellees. ) JUDGE PRESIDING.

PRESIDING JUSTICE WOLFSON delivered the opinion of the

court:

When a township form of government is in place, who makes the decisions for the town -- the township board of trustees or the townspeople?  Members of the Maine Township Board of Trustees thought they had the right to decide to build an addition to their town hall.  Some of the town's residents did not think the Board should make that decision without the consent of the townspeople.  In accord with the provisions of the Town Code, these residents gathered at the annual Town meeting and, as "electors," voted against the addition.  This court must decide whether the townspeople had the authority to overrule the Board on this and other matters.

FACTS

The Town of Maine is organized as a township and, as such,  is governed by the Illinois Township Code, 60 ILCS 1/1-1 
et
 
seq.
 (West 1996).  On April 11, 1995, Maine held its annual town meeting in accord with section 30-5 of the Township Code.  60 ILCS 1/30-5 (West 1996).  At the meeting, a slim majority of the Townships' electors (Electors) voted in favor of the following measures:

(1) To rescind the prior action of the Board of Trustees regarding the construction of an addition to the Town Hall and direct the Board to take no further action to construct such addition or to incur any further expenses therefore, unless approved by a majority of the Electors in a binding referendum;

(2) To direct the Board to transfer $467,000 from the General Town fund (building fund) to the Highway Department Reserve Contingency Fund to be utilized for flood control, or for tax abatement in the next fiscal year;

(3) To direct the Board to reimburse Trustee Ebert for legal expenses incurred in earlier litigation against Town Supervisor Thompson and Town Administrator Anderson;

(4) To direct the Board to place a cap of $300/month or $3,600/year, on expenses to public relations consultants and employees;

(5) To direct Town Clerk Warner to tape record all town meetings open to the public and make copies of the tape available within seven (7) days of the meeting;

(6) To direct the Board to implement a policy whereby members of the public are provided the opportunity to speak for a maximum of five (5) minutes at all public meetings, without having to register or give prior notice of the intention to speak to any Township officials; and

(7) To direct the Board to limit salary increases for the Town Administrator and department heads in the next fiscal year to the cost of living.

At the Board's next regularly-scheduled, bi-monthly meeting, on April 25, 1995, Trustee Elliot moved that the Board implement each of the Electors' directives, as listed above.  By a vote of three to two, the Board voted to table Trustee Elliot's motions.  In addition, the Town Clerk admitted that he was not tape-recording the meeting and indicated that he would not comply with the Electors' directive to tape record future Board meetings.  The Board also refused to recognize members of the public who attempted to speak at the meeting without having given prior notice.

On May 1, 1995, certain Electors (plaintiffs) filed a complaint against the Town Clerk, the Town Supervisor, the Town Administrator and two Town Trustees, individually and in their official capacities, (collectively referred to as defendants) for a "Writ of Mandamus and Other Relief."  The plaintiffs said that they were bringing the action individually and on behalf of a majority of Electors of the Township of Maine.

In count I of the complaint, plaintiffs sought to compel the named town officers to act in accord with the mandates issued by the majority of the Electors at the April 11, 1995, annual town meeting.  In count II, plaintiffs alleged that $47,000 had been paid to an architectural consultant for the Town Hall addition and that the payment, having been made in direct violation of the Electors' directive, constituted a breach of fiduciary duty by the Town officers.  The plaintiffs requested compensatory and punitive damages.

In a separate pleading, plaintiffs sought a preliminary injunction against the Town officers, seeking to enjoin them from taking any further steps toward the construction of the Town Hall addition.  Plaintiffs also sought affirmative relief -- a directive to the Town Clerk to tape record all future Board meetings.

On May 25, 1995, defendants responded by filing a motion seeking dismissal of count I of the complaint and summary judgment on count II of the complaint.

On June 1, 1995, plaintiffs filed a motion for summary judgment as to count I; a motion to strike defendant's Exhibit A (a purported copy of the "official minutes" of the annual meeting); and a response to defendants' motion for summary judgment.

On June 8, 1995, the circuit court denied the request for preliminary injunction.  On August 7, 1995, the court issued the following rulings: plaintiffs' motion for summary judgment on count I was denied; defendants' motion to dismiss with prejudice count I of plaintiffs' complaint was granted; and defendants were granted summary judgment as to count II of the complaint.  The trial court added Rule 304(a) language to the order.

A notice of appeal was filed from this August 7, 1995, order on September 5, 1995.  Appeal was brought by two of the three plaintiffs in the action below.  They ask this court to reverse the trial court's determination and to issue the writ of mandamus to compel the named members of the Town Board to obey the specific orders and directives issued to them by the electors at the April 11, 1995, annual meeting.

PRELIMINARY MATTERS

Before addressing the merits of any issues this appeal raises, there are two preliminary matters to consider.

First, this court must consider defendants' challenge to the appellants' standing to pursue this appeal.  Defendants point out that one of the plaintiffs in the trial court (Danette Matyas) failed to join in the appeal.  Defendants claim, without citation to authority, that because Matyas joined in the action in the trial court as a representative of the Electors of the Town of Maine, her failure to join in the appeal gives defendants a final judgment as to the Electors, which negates the other town representatives' ability to proceed.

Appellants deny that Matyas' failure to join in the appeal robs them of standing to bring the appeal.  Because the initial complaint for mandamus identified each of the plaintiffs as residents and domicillaries of the Town of Maine, properly within the class of persons defined as "electors" by the Town Code, appellants say, each plaintiff had the independent capacity to bring suit and appeal from the adverse ruling.  We agree.

There is no basis for adopting the defendants' position.  
Basic principles of standing support a determination that each of the named plaintiffs had the independent capacity to sue (see, for example, 
Egidi v. Town of Libertyville
, 218 Ill. App. 3d 596, 578 N.E.2d 1300 (1991)), and, thus, pursue this appeal.  

Second, the parties to this appeal dispute the standard of review to be applied by this court.  Appellants contend that our review is 
de
 
novo
 since the trial court ruled on matters of law when it dismissed with prejudice count I seeking a writ of mandamus and granted summary judgment as to count II for damages.  Defendants contend that, because the grant of a writ of mandamus is within the discretion of the trial court, we should review the trial court's rulings for an abuse of discretion.

We have reviewed the case law concerning mandamus actions and have determined that mandamus is an extraordinary remedy awarded in the exercise of sound judicial discretion according to legal principles.  
People ex rel. Kula v. O'Connell
, 394 Ill. 409, 68 N.E.2d 758 (1946).  Mandamus is proper when one seeks to compel a public officer to perform duties which are purely ministerial in nature and which require no exercise of judgment on the part of the public officer.  
People ex rel. Pyrzynski v. Daley
, 34 Ill. App. 3d 1077, 1080, 341 N.E.2d 24 (1975).  Mandamus is available only when the plaintiff has set forth every material fact needed to prove that he has a clear, legal right and is entitled to the performance of the act he seeks to compel.  
Vanko v. Sheahan
, 278 Ill. App. 3d 302, 303, 662 N.E.2d 512 (1996).  The decision to grant or deny a writ of mandamus should be reversed on appeal only when the decision is against the manifest weight of the evidence.  
Taylor v. Wentz
, 15 Ill. 2d 83, 153 N.E.2d 812 (1958);  
Machinis v. Board of Election Commissioners
, 164 Ill. App. 3d 763, 518 N.E.2d 270 (1987).  Since plaintiffs sought a writ of mandamus, this is the standard by which this court reviews the appeal.

OPINION

When the trial court granted defendants' motion to dismiss the complaint for a writ of mandamus and awarded defendants summary judgment on count II for damages, the court expressed an opinion that the township form of government, where both the towns people (electors) and the elected officials share authority, was outmoded.  In denying the writ of mandamus, the court ruled that 
Evers v. Collinsville Township
, 269 Ill. App. 3d 1069, 647 N.E.2d 1058 (1995), provided a basis for finding that a township board, not the electors, has the authority to act on behalf of the town with regard to the construction of a town hall and that the electors' only redress on the matter is "at the ballot box."  The court failed, however, to analyze the Town Code to determine what authority, if any, the electors have concerning the town hall.  

Though we find that the denial of the writ of mandamus should be affirmed, we do not adopt the trial court's reasoning.

The Town Code clearly provides for a form of government in which the town's legislative powers are not exclusively reserved for the elected town officials who comprise the Township Board, but are shared with the "electors," the townspeople who are present and vote at the annual town meeting.  See Opinion Letter, Office of the Attorney General, State of Illinois, File No. 96-019, March 7, 1996.

The distribution of power between these two entities (the town board and the electors) is defined, for the most part, by the Town Code.  In general, the powers allocated to the electors are enumerated in Article 30, while the powers of the town board, as a whole, and of the individual town officers, can be found at various locations throughout the Code.

Still, as with any statute, a problem arises where a particular matter does not fall neatly into any one pigeon hole.  When the Town Code does not explicitly address a particular topic or make an action the responsibility of one particular officer or entity, conflict arises.  Then the Town Code, like any statute, must be interpreted to determine whether actions taken by an entity exceeded the lawful authority granted to that entity.

In the present case, what emerges from the record is a sense that certain townspeople were disgruntled over the Town Board's apparently unilateral decision to construct an addition to the town hall.  These disgruntled townspeople appeared at the annual town meeting to assert their authority to prohibit the Board from continuing with its plans to construct the addition, at least until such time as the townspeople could vote in a referendum on whether the addition was necessary.

These townspeople voted at the annual town meeting to stop the construction plans.  A directive was issued by the electors advising the Board that it must cease all acts in furtherance of the new construction.  The second directive, commanding the Board to transfer the funds allocated for the construction to another account, was an attempt to remove the funds necessary for the construction from the Board's control.

The question that must be answered is whether the decision to construct an addition to the town hall falls within the scope of authority afforded the Board or the electors.  As both sides' briefs make clear, the Town Code provides no clear and distinct answer to this question.

The appellants claim the right to make determinations regarding an addition to the town hall by virtue of their authority under section 30-50(a), which states:

"Purchase and use of Property.  (a) The electors may make all orders for the purchase, sale, conveyance, regulation, or use of the township's corporate property (including the direct sale of single township road district property) that may be conducive to the interests of its inhabitants, including the lease, for up to 10 years at fair market value, of corporate property for which no use or need during the lease period is anticipated at the time of leasing."

They claim that a referendum on the issue should have been held pursuant to section 30-205.  This section, entitled "Advisory referenda" states:

"By a vote of the majority of electors present at a town meeting, the electors may authorize that an advisory question of public policy be placed on the ballot at the next regularly scheduled election in the township.  The township board shall certify the question to the proper election officials, who shall submit the question in accordance with the general election law."

The electors, say appellants, had the right to transfer funds pursuant to section 245-5 of the Code, which provides that "the legal voters of a township at the annual township meeting... may, by a written resolution by a majority vote of the legal voters present and voting on the resolution, transfer from one or more township funds to any other township fund..."

Defendants do not explain why these provisions do not apply to the construction of the town hall.  They merely contend that because the provisions do not explicitly mention the town hall, the electors' right to govern this matter is "unclear."  Defendants also claim that the Board has the right to decide to construct the addition pursuant to its general grant of authority to expend funds for "ordinary and necessary capital expenditures authorized by law."

Towns have only the powers granted to them by law (Ill. Const. of 1970, art. VII, sec. 8), 
i.e.
, the corporate capacity to exercise the powers granted to it, or necessarily implied, and no others (60 ILCS 1/85-10(a) (West 1996).)  The Town Code clearly provides that a "town" may construct a town hall.  See 60 ILCS 1/85-10(a) (West 1996).  But what entity (electors or board) has the authority over such construction, is not stated.  The Code provides in section 140-5(a):

"Whenever it is desired to build, purchase, or lease, for a longer period than 5 years, a township hall, a multipurpose senior center, or a combined township hall and multi-purpose senior center in any township, at least 25 electors of the township may, before the time of giving notice of the annual township meeting, file with the township clerk a petition in writing that the proposition of building, purchasing, or leasing a township hall, a multi-purpose senior center, or a combined township hall and multi-purpose senior center and issuing bonds for the building, purchase, or lease be submitted to the voters of the township at the next ensuing general election."

Though this provision seems to suggest that it is the electors who have the power to make decisions regarding the construction of a town hall, defendants say this provision does not apply in this case because no bond was being sought.

Defendants also cite 
Evers v. Collinsville Township
, 269 Ill. App. 3d 1069, 647 N.E.2d 1058 (1995), as authority in support of their claim that it is within the Board's power to make decisions regarding the construction of a town hall.

We must acknowledge that the 
Evers
 court does make the explicit finding that "the town electors' enumerated powers do not include the authority to construct a township hall or township building."  The 
Evers
 court then goes on to state that "the town supervisor acting in his capacity of chief executive officer of the township (60 ILCS 5/11-3(a) (West 1992)) had the specific authority to contract for the construction of a town hall.  60 ILCS 5/4-2(c) (West 1992), now 60 ILCS 1/85-10 (West 1996)."

These statements, however, are dicta.  
In 
Evers
, an individual citizen, not the majority of the electors at an annual town meeting, was challenging the Town Board's authority to contract for the construction of a town hall.  The 
Evers
 court was not required to decide between the two corporate entities (electors and board) when deciding whether the Board had the right to make decisions regarding the construction of the town hall.  The 
Evers
 court makes passing reference to the electors' enumerated powers, but does not address, specifically, the electors' power over corporate property in section 30-50(a).

In our case, the question squarely before the court is whether the Town Code, by implication, gives the electors any greater authority over the decision to construct a town hall than it does to the Town Board.  Though we acknowledge that the Town Code nowhere provides, explicitly, who has the authority to make the decision to construct a town hall, a close reading of the Town Code tends to supports the electors' position that the construction of a town hall is an area in which the Town Board has no independent power, but must act only upon direction of the electors.

Section 30-50(a) gives the electors, not the Board, the power to regulate the "use" of corporate property.   When a township desires to build a town hall and must borrow money and issue a bond for that purpose, section 140-5 requires electors to present the matter at the annual meeting and issue a referendum on the bond issue.  These provisions suggest that the electors, not the Board, must determine whether a town hall addition should be built.  If the Board finds the Town Code too cumbersome or overly laden with grass roots democracy, its remedy is in the legislature, not in the courts.

Having reached this determination, it does not follow, however, that a writ of mandamus should have been granted.  As stated earlier, mandamus is proper when one seeks to compel a public officer to perform duties which are purely ministerial in nature and which require no exercise of judgment on the part of the public officer.  
People ex rel. Pyrzynski v. Daley
, 34 Ill. App. 3d 1077, 1080, 341 N.E.2d 24 (1975).  A clear, legal right to compel the performance of the act must be evident.  
Vanko v. Sheahan
, 278 Ill. App. 3d 302, 303, 662 N.E.2d 512 (1996).  That was not the case here.  Whether the town electors or the Town Board had the authority to make decisions regarding the construction of an addition to the town hall is not clearly evident from the Code.  Arguments can be made for both sides.  It is a matter of interpretation.  Though we would have resolved the matter differently than the trial court, we cannot say that the trial court abused its discretion by refusing to issue a writ of mandamus.

In addition, we note that the annual meeting took place in April 1995 and the motion for preliminary injunction was denied with no appeal taken.  The Town Hall addition has been completed.  We cannot provide effective relief from the trial court's denial of the writ of mandamus on the directives regarding the town hall construction and the funds appropriated for that purpose.  Matters pertaining to the construction and the transfer of funds are moot.  See 
Owen v. Board of Education
, 261 Ill. App. 3d 298, 300, 632 N.E.2d 1073 (1994) (case is moot where events occur which render it impossible for the reviewing court to grant effective relief to either party).  

Regarding the three other directives -- to reimburse Elliot's legal expenses, to cap expenditures for public relations consultants, and the tape recording of town meetings -- these directives involve matters where the Town Code provides no explicit right or authority to the electors.  The electors allege, however, that when they are gathered at an annual town meeting, they share general corporate powers with the Board.  It is by virtue of these alleged shared corporate powers that they claim authority to issue these directives.

In an opinion letter filed by the Office of the Attorney General for the State of Illinois on March 7, 1996, File No. 96-019, on the issue of the powers of township electors, the Attorney General states:

"It is well established that townships, like all other non-home-rule units of local government, have no inherent powers, but only those granted to them by the constitution or by statute.  
Diversified Computer Service v. Town of York
, 104 Ill. App. 3d 852, 857 (1992).  Article VII, Section 8 of the Illinois Constitution of 1970 provides that townships shall have only the powers granted to them by law.  Clearly, the extent of the powers which may be exercised by township electors, and the apportionment of powers between the electors and the township board, is a matter of legislative prerogative, (see 
Hill v. Butler
, 107 Ill. App. 3d 721, 725-26 (1982)), and is necessarily defined by the statutes which constitute grants of such powers.  The fact that electors have been delegated the right to act directly upon specified township matters, however, does not mean that the electors have the plenary power to act upon any matter which may in some way relate to the township, or to exercise those powers which the General Assembly has granted to the township board or other township officers."

We agree with this opinion letter.  We hold that the electors' powers and authority to act must be grounded upon some specific statutory delegation of authority.  For the electors to have control over any matter, they must be able to cite some basis in the Town Code for finding that the authority was granted to the electors to act.

Also, electors may not exercise powers which are specifically delegated to the Board or other town officers.  The remaining three directives pertain to matters that are not within the electors' scope of authority.  The payment of Elliot's legal fees and the amount to be appropriated for public relations consulting are budgetary matters.  Since the Board is commissioned with the duty to comply with the Illinois Municipal Budget Law (section 80-60 of the Code), such matters would be within the Board's power to determine.

The town clerk is given the duty of recording the proceedings of all board meetings in section 80-45 of the Code.  The manner in which this obligation is carried out should be left to his discretion.

With respect to count II, we agree with defendants that summary judgment was properly granted.  Even if the electors had the authority to regulate the construction of the town hall addition, the directive issued by the electors was prospective in nature.  The electors directed the board to cease taking 
any further action
 toward the completion of the town hall construction.  An affidavit submitted by the defendants indicated that the payment to the architect was for work that had already been completed at the time the directive was issued.  Thus, the payment was not in violation of the electors' directive and no damages should have been awarded.  The trial court did not err in granting summary judgment to defendants on this count.

                          
CONCLUSION

In summary, though the electors may have authority to decide matters pertaining to the construction of an addition to the town hall and the power to authorize the transfer of funds, that right was not so clear that the trial court was undoubtedly wrong when it refused to issue a writ of mandamus on these two directives.  Furthermore, relief is no longer available and the matter is now moot.

With respect to the other directives, appellants were unable to show a clear, legal right to compel the Board to act as they directed.  The directives pertained to matters which were not within the electors' scope of authority to address.

The trial court's orders dismissing count I of the complaint and granting summary judgment as to count II, is affirmed.

AFFIRMED.

McNAMARA and CERDA, JJ., concur.