# Illinois Official Reports

## Appellate Court

*Mabwa v. Mendoza*, 2014 IL App (1st) 142771

| | |
|---|---|
| Appellate Court Caption | ROSE MABWA, LORENZO PATE, SANDRA RAMSEY, MICHAEL QUINLAN, CASSANDRA CHERIF, DOMINICK CHEW, and MARION COLEMAN, Plaintiffs-Appellants, v. SUSANA A. MENDOZA, Clerk of the City of Chicago, Defendant-Appellee (The Chicago Board of Elections and Its Commissioners, Langdon D. Neal, Richard A. Cowen and Marisel A. Hernandez, Defendants). |
| District & No. | First District, Fifth Division<br>Docket No. 1-14-2771 |
| Filed | October 7, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly denied plaintiffs' complaint for a writ of *mandamus* to compel defendant, the city clerk of the City of Chicago, to certify defendants' petitions seeking to place on the ballot the question of whether the retail sale of alcoholic liquor should be allowed in a certain precinct of a certain ward, notwithstanding plaintiffs' contention that the petitions "substantially" complied with the Liquor Control Act, since plaintiffs failed to file with their petitions the attestations of the circulators swearing to the dates the voters signed the petitions, the attestations that were filed merely stated that the voters signed on "the dates indicated," nearly half of "the dates indicated" were missing, incomplete or wrong, there were various indications that some voters signed outside the time limit set by the statute, some of the circulator attestations had incomplete or inconsistent cross-outs, and at least one sheet had dates that did not proceed in chronological order. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 14-CH-13812; the Hon. David A. Skryd, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |

| | |
|---|---|
| Counsel on<br>Appeal | James Shapiro, of Robinson, Shapiro & Schwartz, LLC, of Chicago, and Jeffrey D. Greenspan, of Skokie, for appellants. |
| | Stephen R. Patton, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, and Jonathon D. Byrer, Assistant Corporation Counsel, of counsel), for appellee. |

| | |
|---|---|
| Panel | JUSTICE GORDON delivered the judgment of the court, with opinion.<br>Justices McBride and Reyes concurred in the judgment and opinion. |

## OPINION

¶ 1    On July 22, 2014, plaintiffs filed a petition with the office of the city clerk of the City of Chicago (the City), which requested that the voters of the 18th precinct in the 27th ward be able to vote in the upcoming November 4, 2014, election on the question of whether: "the sale at retail of alcoholic liquor be prohibited in this 18th precinct of the 27th ward of the City of Chicago (as such precinct existed as of the last general election)." Defendant Susana A. Mendoza, the clerk of the City of Chicago, did not certify the petition as valid, and plaintiffs then sought a writ of *mandamus* from the trial court to order the clerk to certify the petition.

¶ 2    On this appeal, plaintiffs argue that the trial court abused its discretion in denying a writ of *mandamus*. Plaintiffs acknowledge in their appellate brief that "the role of the clerk is to determine whether the petition on its face apparently conforms to the statutory requirements." However, they argue that their signature sheets were in substantial compliance, despite the facts: (1) that plaintiffs chose not to file, with their petition, the statutorily required attestations from the circulators swearing to the dates on which the voters signed; (2) that the attestations failed to provide any information at all about the dates on which the voters signed except to state that the sheets were signed on "the dates indicated" by the voters themselves; (3) that almost half "the dates indicated" by the voters were missing, incomplete or wrong; (4) that one voter's signature bears the date "6/12/2012," although the petition had to be signed within four months of its July 22, 2014, filing; (5) that some of the other dates indicate a possible 2012 date; (6) that some of the circulator attestations had incomplete or inconsistent cross-outs; and (7) that, on at least one of the sheets, the dates do not proceed in chronological order.

¶ 3    For the following reasons, we affirm the trial court.

BACKGROUND

On July 22, 2014, a petition was filed with the office of the city clerk of the City of Chicago which requested that the following proposition be submitted to the voters of the 18th precinct in the 27th ward in the upcoming November 4, 2014, election:

> "Shall the sale at retail of alcoholic liquor be prohibited in this 18th precinct of the 27th ward of the City of Chicago (as such precinct existed as of the last general election)?"

The petition was accompanied by 29 signature sheets, which were gathered by seven circulators and possibly an eighth. The seven circulators were: (1) Rose Mabwa, (2) Sandra Ramsey, (3) James Allen, (4) Lorenzo Pate, (5) Stefano Viola, (6) Constantine Argiris, and (7) Donna Lewis. The possible eighth is Timothy Stevens; however, on all the sheets which contain his name, Rose Mabwa's name is either crossed out or still present.

Mabwa's name appears, in some fashion, on 8 of the 29 sheets. A circulator's name appears in three places on each signature sheet: (1) in the blank space for the "Circulator's Name," (2) in the blank space for the "Circulator's Signature," and (3) in the blank space for the "Name of Circulator," which is filled in by the notary public.

All of the Mabwa sheets have crossed-out names. On sheet Nos. 1 and 4, by "Circulator's Name," Mabwa's name has a line through it and then it is reprinted above. Her signature also has a line through it, as though it were also crossed out, but it is not re-signed.

On sheet No. 2, her name is again crossed out by "Circulator's Name," but on this sheet the name "Timothy Stevens" is printed over it, rather than her own name. The signature line has Mabwa's signature without a line through it, but there is an extra squiggle next to her signature, which appears to be an additional signature. This squiggle is the same signature that appears on later sheets which state that Timothy Stevens was the person appearing before the notary. However, although Stevens' name appears on sheet No. 2 as the "Circulator's Name," and although his signature appears on the signature line, Mabwa's name is the name of the person stated as appearing before the notary public, not Stevens.

On sheet Nos. 3, 17, 23, 26 and 28, Mabwa's name is crossed out in all three places, and Timothy Stevens' name appears as both the "Circulator's Name," and the person appearing in front of the notary public. Next to Mabwa's signature, which has a line through it, is the same squiggle appearing on sheet No. 2.

It is undisputed: (1) that the 29 sheets contained 184 provisional signatures, (2) that 132 signatures were required, and (3) that plaintiffs chose not to file, with their petition, the statutorily required attestations from the circulators swearing to the dates on which the voters signed and instead chose to rest the validity of those dates solely on what the voters wrote themselves.

All of the dates which are complete dates were in June or July 2014, with the month written as a "6" or a "7." For at least nine of the signatures, "60612" appears in the date column, which could be either the date of June 6, 2012, or the ZIP code of the voter. However, on sheet No. 3, which is one of the eight Mabwa sheets, one voter printed "6/12/2012," which cannot possibly be a ZIP code and which is unmistakably a date from two years ago.

It is undisputed that, of the 184 provisional signatures, 81 or almost half contain either no date or an incomplete or inappropriate date, and that, of those with an incomplete date, 2 list only the day and 67 list only the month and day. Plaintiff argues that, if we include the 69

signatures with partial dates, then the petition contains 172 dated signatures, which is 40 more signatures than the 132 required.

¶ 15　However, plaintiff includes in this number 48 full or partially dated signatures from the eight Mabwa sheets. The eight Mabwa sheets contain 27 fully dated signatures, 19 with only the month and day, and 2 with only the day.

¶ 16　In a letter dated August 15, 2014, and addressed to "Tim Stevens," the city clerk stated that "[t]his office has decided not to certify to the Board of Elections of the City of Chicago the petition filed" because of an "insufficient number of signatures."

¶ 17　　　　　　　　II. The Complaint for Writ of *Mandamus*

¶ 18　On August 25, 2014, plaintiffs filed a complaint for a writ of *mandamus*. Three of the six plaintiffs are Rose Mabwa, Lorenzo Pate and Sandra Ramsey, who had also been circulators. The remaining three plaintiffs are Michael Quinlan, Cassandra Cherif, Dominick Chew and Marion Coleman. Defendants are the city clerk and the Chicago Board of Elections (Board) and its commissioners, Langdon D. Neal, Richard A. Cowen and Marisel A. Hernandez. The complaint asked that "a Writ of *Mandamus* be issued requiring Defendants to place said proposition on the ballot in the November 18, 2014 election in the 18th precinct of the 27th Ward."

¶ 19　On September 3, 2014, the matter was on the calendar and the trial court issued a scheduling order directing (1) the "City of Chicago to file its motion to dismiss by Friday, September 5, 2014"; (2) plaintiffs to reply by Tuesday, September 9, 2014; and (3) the "[m]atter [is] set for hearing at 9:30 a.m. *** on September 10, 2014." The record does not contain a transcript for the court appearances on either September 3 or September 10.

¶ 20　　　　　　　　III. The City Clerk's Motion to Dismiss

¶ 21　On September 5, 2014, the city clerk filed a motion to dismiss, pursuant to section 2-615 of the Illinois Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)) for failure to state a claim upon which relief may be granted. The motion argued, first, that "[a]t least 81 of the collected signatures have a serious defect in the date field, such as a blank date field, containing a ZIP code in the date field or omitting the month and/or year from the date field."

¶ 22　Second, the motion argued that a writ of *mandamus* cannot be granted to compel an action by a public official where the act sought is discretionary, and that the clerk has discretion in applying the law to the facts when reviewing petitions to determine whether they should be certified to the Board.

¶ 23　　　　　　IV. Plaintiffs' Response and Motion for Summary Judgment

¶ 24　In response to the City's motion to dismiss, plaintiffs filed a combined document entitled: "Plaintiffs' Response to Clerk of the City of Chicago's Motion to Dismiss and Plaintiffs' Motion for Summary Judgment." While section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2012)) permits a party to file a combined motion, there is no provision for a combined "response and motion" such as plaintiffs submitted here. Even where the Code permits a combined motion, it requires the motion to "be in parts," with each part "limited to" and clearly labeled as made under section 2-615, which governs motions to dismiss, or section 2-1005, which governs summary judgment, or section 2-619, which permits

dismissal based upon certain defects or defenses. 735 ILCS 5/2-619.1 (West 2012). The combined document submitted by plaintiffs is not limited and labeled as required. There is no indication in the record that plaintiffs' motion for summary judgment was docketed or scheduled for briefing or heard; thus, we do not know whether the trial court struck or simply disregarded this improper submission. The city clerk did not respond to it. Since plaintiffs never obtained a ruling on this motion, it is not before us on appeal. *Raintree Homes, Inc. v. Village of Kildeer*, 302 Ill. App. 3d 304, 306 (1999) ("In order to preserve an issue for review, an appellant must first obtain either a ruling on the issue or a refusal to rule thereon from the trial court." (citing *Goodrich v. Sprague*, 376 Ill. 80, 86 (1941))).

¶ 25 Nonetheless, for the sake of completeness, we describe here the affidavits which plaintiffs submitted in support of their motion for summary judgment. In support, plaintiffs submitted affidavits from only three of the possibly eight circulators: (1) Sandra Ramsey; (2) Rose Mabwa; and (3) Lorenzo Pate.

¶ 26 Although Ramsey's name appears as the circulator on sheet No. 7, Ramsey's affidavit swears only that she circulated sheet Nos. 5, 6, 14, 15 and 19. Her affidavit swears that the signatures were signed in her presence between June 12, 2014, and July 11, 2014, although several of the dates on her sheets read "7/18."

¶ 27 Although Mabwa's signature is crossed out on sheet Nos. 1 and 4, and although sheet No. 2 states the "Circulator's Name" as "Timothy Stevens," Mabwa's affidavit swears that she circulated sheet Nos. 1, 2 and 4, and they were signed in her presence on June 11 and 12.

¶ 28 The third and last affidavit was from Lorenzo Pate, who swore that he circulated sheet Nos. 10, 16 and 21, and they were signed in his presence between June 20, 2014, and July 7, 2014. On sheet Nos. 10 and 21, the dates go in chronological order, with the earlier signatures appearing before the later ones. However, on sheet No. 16, the dates are not in chronological order. The first signatures on the list are dated *after* the later signatures.

¶ 29                                          V. The Trial Court's Order

¶ 30 On September 10, 2014, the trial court granted the city clerk's motion to dismiss in a written order which states in full:

"All parties being present and the matter having been heard by the Court, it is hereby ordered:

1) Defendant Mendoza's motion to dismiss is granted;

2) The matter is dismissed with prejudice and is off call;

3) The local option petition filed by Plaintiffs with the City Clerk is invalid and no referendum on the matter shall appear on the ballot based upon the Clerk's determination not to certify the petition."

¶ 31 While an attorney filed an appearance and other documents on behalf of the city clerk, defendants Chicago Board of Elections and its commissioners did not file any papers in the court below which appear in the record before us. These defendants have also chosen not to file a brief in this appeal. Thus, they are not parties to the appeal.

¶ 32 On September 12, 2014, plaintiffs filed a notice of appeal from the trial court's September 10, 2014, order, dismissing with prejudice their petition for a writ of *mandamus* to the city clerk. This appeal followed.

¶ 33                                    ANALYSIS

¶ 34        Plaintiffs argue on appeal that the trial court abused its discretion in denying a writ of *mandamus* to the city clerk. Plaintiffs acknowledge in their appellate brief that "the role of the clerk is to determine whether the petition on its face apparently conforms to the statutory requirements." However, they argue that their signature sheets were in substantial compliance, despite the facts: (1) that plaintiffs chose not to file, with their petition, the statutorily required attestations from the circulators swearing to the dates on which the voters signed; (2) that the attestations failed to provide any information at all about the dates on which the voters signed except to state that the sheets were signed on "the dates indicated" by the voters themselves; (3) that almost half "the dates indicated" by the voters were missing, incomplete or wrong; (4) that one voter's signature bears the date "6/12/2012," although the petition had to be signed within four months of its July 22, 2014, filing; (5) that some of the other dates indicate a possible 2012 date; (6) that some of the circulator attestations had incomplete or inconsistent cross-outs; and (7) that, on at least one of the sheets, the dates do not proceed in chronological order.

¶ 35                               I. Standard of Review

¶ 36        Our supreme court has repeatedly cautioned that "[m]andamus is an extraordinary remedy," which may be used to enforce the performance of official duties by a public officer only where the petitioner is entitled to the performance "as a matter of right" and only " 'where no exercise of discretion' " on the part of the officer " 'is involved.' " *Noyola v. Board of Education of the City of Chicago*, 179 Ill. 2d 121, 133 (1997) (quoting *Madden v. Cronson*, 114 Ill. 2d 504, 514 (1986)). See also *Lewis v. Spagnolo*, 186 Ill. 2d 198, 229 (1999); *People v. Latona*, 184 Ill. 2d 260, 277 (1998); *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 109 (1997) ("*mandamus* is an extraordinary remedy" proper only when the acts compelled are "purely ministerial" and "require no exercise of judgment" by the public officer); *Crump v. Illinois Prisoner Review Board*, 181 Ill. App. 3d 58, 60 (1989). "*Mandamus* cannot be used to direct a public official or body to reach a particular decision or to exercise its discretion in a particular manner, even if the judgment or discretion has been erroneously exercised." *Crump*, 181 Ill. App. 3d at 60.

¶ 37        In *Crump*, this court held that, "absent an abuse of discretion" on the part of the trial court, "a reviewing court will not overturn the trial court's grant or denial of a writ of *mandamus*." *Crump*, 181 Ill. App. 3d at 60. See also *People v. Latona*, 184 Ill. 2d 260, 277 (1998) ("issuance of a writ of *mandamus*" is "discretionary in nature"). The *Crump* decision stated only that the trial court had "dismissed" the petition, without specifying if the defendants had made a motion to dismiss or a motion for summary judgment. *Crump*, 181 Ill. App. 3d at 59.

¶ 38        However, in *Baldacchino*, this court expressly rejected the defendants' argument that the standard of review for a trial court's grant or denial of a writ of *mandamus* was "abuse of discretion," and held instead that the trial court's decision "should be reversed on appeal only when the decision is against the manifest weight of the evidence." *Baldacchino*, 289 Ill. App. 3d at 109. Yet, later in this same opinion, the court held: "Though we would have resolved the matter differently than the trial court, we cannot say that the trial court abused its discretion by refusing to issue a writ of *mandamus*." *Baldacchino*, 289 Ill. App. 3d at 113. In *Baldacchino*, the trial court had denied the plaintiffs' motion for summary judgment and granted the defendants' motion to dismiss. *Baldacchino*, 289 Ill. App. 3d at 108. This procedural posture is

somewhat different from the case at bar in that, in our case, the trial court issued no ruling on plaintiffs' motion for summary judgment.

¶ 39 "An abuse of discretion exists where the trial court's decision is arbitrary or fanciful, or where no reasonable person would agree with the court's position." *Seymour v. Collins*, 2014 IL App (2d) 140100, ¶ 21. "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002).

¶ 40 In the case at bar, we do not have to resolve this issue because, whether we applied an abuse-of-discretion, or an against-the-manifest-weight, or even a *de novo* standard of review, we still could not find any error by the trial court.

¶ 41 ## II. Writ of *Mandamus*

¶ 42 "For a complaint seeking *mandamus* to withstand" a motion to dismiss, "it must allege facts which establish [(1)] a clear right to the relief requested, [(2)] a clear duty of the respondent to act, and [(3)] clear authority in the respondent to comply with the writ." *Noyola*, 179 Ill. 2d at 133, *cited by Lewis*, 186 Ill. 2d at 229.

¶ 43 In the case at bar, the third element is not in dispute. Defendant concedes in her appellate brief "that, generally speaking, [the city clerk] has the authority to take the particular action requested."

¶ 44 ## III. The Liquor Control Act

¶ 45 Plaintiffs submitted their petition to the city clerk pursuant to the Liquor Control Act of 1934 (235 ILCS 5/1-1 *et seq.* (West 2012)) (the Act). Article 9 of the Act permits local voters to hold a referendum on the retail sale of alcohol in their precinct and sets forth the conditions for the referendum. 235 ILCS 5/9-1 *et seq.* (West 2012).

¶ 46 Section 9-2 provides in relevant part:

> "When any legal voters of a precinct in any city, village or incorporated town of more than 200,000 inhabitants, as determined by the last preceding Federal census, desire to pass upon the question of whether the sale at retail of alcoholic liquor shall be prohibited in the precinct or at a particular street address within the precinct, they shall, at least 104 days before an election, file in the office of the clerk of each city, village or incorporated town, a petition directed to the clerk, containing the signatures of not less than 25% of the legal voters registered with the board of election commissioners or county clerk, as the case may be, from the precinct." 235 ILCS 5/9-2 (West 2012).

There is no dispute that "25% of the legal voters" in the case at bar came to 132 voters, and thus, the petition needed 132 valid signatures for the proposition to be placed on the upcoming ballot.

¶ 47 The Liquor Control Act grants Illinois citizens the right to restrict or prohibit the sale of alcohol in their own precinct, but it grants them this right only under certain conditions. However, the submission of the issue to the electorate is mandatory only "when the petition has been filed in proper form with the clerk." 235 ILCS 5/9-2 (West 2012). *Haymore v. Orr*, 385 Ill. App. 3d 915, 918 (2008) (if a petition does not appear "on its face" to have complied with the statutory requisites, then the clerk has "no duty to submit the question"); *North v. Hinkle*, 295 Ill. App. 3d 84, 88 (1998) (same).

¶ 48    The Act provides that "[a] petition for submission of the proposition shall be in substantially the following form," and then it provides, word for word, the form. 235 ILCS 5/9-4 (West 2012). Thus, all circulators need to do is to copy and paste from the statute. That was not done in the case at bar, and plaintiffs argue instead that their sheets are "substantially" in the required form. 235 ILCS 5/9-4 (West 2012).

¶ 49    The Act provides that the petitions "shall conform to the requirements of the general election law, as to form and signature requirements." 235 ILCS 5/9-4 (West 2012). However, in the very next sentence, the Act provides an additional requirement concerning dates, which was completely missing from the sheets in the case at bar. The Act states: "The circulator's statement shall include an attestation of: (1) that none of the signatures on this petition sheet were signed more than 4 months before the filing of this petition, or (2) the dates on which the petitioners signed the petition, and shall be sworn to before an officer residing in the county where such legal voters reside and authorized to administers oaths therein." 235 ILCS 5/9-4 (West 2012).

¶ 50    The date of the voters' signatures is so important to the Act that it requires two different individuals to write down the date of each signature: (1) the voter; and (2) the circulator. The form prescribed by the Act requires each voter to write the "[d]ate of signing." 235 ILCS 5/9-4 (West 2012). Then, the Act requires the date to be written a second time by a second person, when it directs the circulators to swear before a notary that they obtained the voters' signatures either: (1) less than four months before the petition was filed; or (2) on certain, specific dates. In this manner, the Act refuses to rely solely on the word of the voters, but also requires the circulators to swear before a notary to the validity of the dates. The Act thus creates a double insurance about the validity of the dates.

¶ 51    In the case at bar, the circulators failed to provide any indication of the dates on the sheets, except to state that the signatures were provided "on the date indicated" by the voters themselves. Thus, the double insurance contemplated by the statute was completely missing here. *Cf. Simmons v. DuBose*, 142 Ill. App. 3d 1077, 1080 (1986) (the purpose of the requirement in the Election Code that a circulator must swear to the date on which the voters signed is to "guard against fraud").

¶ 52    As noted above, only a petition "filed in proper form with the clerk" may be submitted to the voters, and the duty of certifying that the petition is in proper form is given to the clerk. 235 ILCS 5/9-4 (West 2012). The Act provides:

> "The *** clerk shall certify the proposition to be submitted at the election to the appropriate election officials, in accordance with the general election law, *unless* the petition has been determined to be invalid." (Emphasis added.) 235 ILCS 5/9-4 (West 2012).

Since the "unless" clause in the above sentence uses the passive voice, the Act does not explicitly name the actor who "determines" the petition to be invalid. However, since the subject in the prior sentence is the "clerk," the inference is that it is the clerk who must, in the first instance, "determine[ ]" whether the petition is valid. 235 ILCS 5/9-4 (West 2012). This conclusion is reinforced by the following sentence, which states: "If the court determines the petitions to be invalid *subsequent to the certification by the clerk*, the court's order *** shall nullify such certification." (Emphasis added.) 235 ILCS 5/9-4 (West 2012). See *Check Inn Lounge, Inc. v. Kozubowski*, 164 Ill. App. 3d 1023, 1031 (1988) ("the Act prescribes comprehensive statutory procedures which require the clerk's involvement, rather than the

board's," including that the petition "must be certified by the clerk"); *cf. Haymore*, 385 Ill. App. 3d at 918 (under the Election Code, "the responsibility for determining whether an election petition apparently conforms to the law rests with the town clerk"); *North*, 295 Ill. App. 3d at 89 (the clerk is the "gatekeeper" who must "turn away" papers that do not comply on their face with the law).

¶ 53 Plaintiffs argue that the trial court abused its discretion by denying a writ of *mandamus* to the clerk, because they had "a clear right to the relief requested," since their petitions "substantially" complied with the Act. We can find no clear right here: (1) where plaintiffs completely ignored a specific requirement set forth in the Act by failing to file, with their petition, the statutorily required attestations from the circulators swearing to the dates on which the voters signed; (2) where the attestations that they did file failed to provide any information at all about the dates on which the voters signed except to state that the sheets were signed on "the dates indicated" by the voters themselves; (3) where almost half "the dates indicated" by the voters were missing, incomplete or wrong; (4) where one voter's signature bears the date "6/12/2012," although the petition had to be signed within four months of its July 22, 2014, filing; (5) where some of the other dates indicate a possible 2012 date; (6) where some of the circulator attestations had incomplete or inconsistent cross-outs; and (7) where, on at least one of the sheets, the dates do not proceed in chronological order.

¶ 54                                                    CONCLUSION
¶ 55 For the foregoing reasons, we can find no abuse of discretion by the trial court.

¶ 56 Affirmed.