DANIEL G. ZILLER, JR., *et al.*, Plaintiffs-Appellees, v. JOHN ROSSI, as Grafton Township Supervisor, *et al.*, Defendants-Appellants.

Second District   Nos. 2—09—0511, 2—09—0592 cons.

Opinion filed September 18, 2009.

James P. Kelly, of Matuszewich, Kelly & McKeever, LLP, of Crystal Lake, for appellant John Rossi.

James F. Bishop, of James F. Bishop & Associates, of Crystal Lake, for appellee Daniel G. Ziller, Jr.

JUSTICE JORGENSEN delivered the opinion of the court:

In these interlocutory appeals filed pursuant to Illinois Supreme Court Rule 307(a)(1) (eff. March 20, 2009), defendants, Grafton Township Supervisor John Rossi and Grafton Township trustees Lois Brothers, Rob LaPorta, Barbara Murphy, and Betty Zirk, appeal the trial court's orders granting preliminary injunctions as requested by plaintiffs, Daniel G. Ziller, Jr., Richard F. Lueth, Tamara L. Lueth, Thomas
Halat, and Frank Kearns. The preliminary injunctions pertained to the township's construction of a new town hall. For the following reasons, we affirm.

## I. BACKGROUND

### A. Appeal No. 2—09—0511 (First Injunction)

On February 26, 2009, plaintiffs filed a "complaint for injunction" and an emergency motion (without notice) for a temporary restraining order against defendants. The complaint alleged that plaintiffs are electors,[1] residents, and taxpayers of Grafton Township. They further alleged that, on February 21, 2009, a public notice was published in the local paper announcing a February 26, 2009, special meeting of the Grafton Township Board of Trustees (the board) "for the purpose of approving bids." According to plaintiffs, the bids related to the construction of a township office building (town hall) on Haligus Road

---

[1]An elector is defined as "a person registered to vote within the township no less than 28 days before the date of the annual [township] meeting." 60 ILCS 30—20(a) (West 2006).

in the Village of Lake in the Hills at a cost of approximately $3.5 million. Plaintiffs alleged that the electors of Grafton Township never authorized the board to enter into contracts for the construction of a town hall, nor did they authorize the submission of the bond issue to referendum. Plaintiffs alleged that they possessed a legal right to have their elected officials follow the law regarding township government and that they would suffer immediate and irreparable harm if the board's special meeting were not enjoined. In the emergency motion for a restraining order, plaintiffs specified that they would be irreparably harmed because, if the board approved bids for constructing the town hall, third parties would obtain contractual rights against the township. Plaintiffs also asserted that they were likely to succeed on the merits of their complaint and that they had no adequate remedy at law. Plaintiffs requested that the court enter an emergency order prohibiting defendants from approving bids relating to the construction of a town hall or from otherwise pursuing the construction of a town hall.

Plaintiffs attached to their complaint the: (1) agenda from the April 10, 2007, annual township meeting; (2) minutes from the 2007 township meeting; (3) agenda from the April 8, 2008, annual township meeting; and (4) minutes from the 2008 township meeting. The minutes from the 2007 meeting reflected that, in new business, "Moderator Kelly called for a motion to grant authority to the [board] to purchase real estate property for the purpose of constructing a new Township site." According to the minutes, the voice vote reflected "all ayes" and the motion passed. The minutes from the 2008 meeting reflect that the 2007 meeting minutes were adopted.

The trial court denied the emergency motion for a temporary restraining order. On April 16, 2009, plaintiffs filed another emergency motion (with notice) for a temporary restraining order against defendants. Moreover, plaintiffs amended their complaint. The amended complaint included assertions that, at the April 14, 2009, annual township meeting, the following question was presented to the electors for a vote: "Should Grafton Township construct an office building on real estate purchased by the Township on Haligus Road in Lake of the Hills, Illinois?" The vote totaled 70 electors in favor, 70 opposed; thus, the construction was not approved.

The motion for a temporary restraining order alleged that a board meeting would be held that evening, April 16, 2009, and that the agenda for the meeting reflected as item "IV" "Township Construction Contracts." Plaintiffs alleged that the board intended to award construction contracts for the construction of the town hall. Plaintiffs alleged that the township electors never approved the construction of

a town hall. Moreover, plaintiffs asserted that, on February 27, 2009, pursuant to statute, the electors filed with the Grafton Township clerk a petition requiring that the question presented in the petition (*i.e.,* the construction of a town hall) be presented to the Grafton Township voters in the November 2, 2010, election. Again, plaintiffs alleged irreparable harm and no adequate remedy at law and requested an order prohibiting defendants from approving bids relating to the construction of a town hall or otherwise pursuing the construction of a town hall. On April 16, 2009, after hearing argument, the court entered the temporary restraining order.

On April 27, 2009, defendants filed a "response to motion for temporary restraining order," arguing: (1) that the trial court lacked jurisdiction to enjoin legislative action; (2) that the doctrine of *laches* applied; and (3) that plaintiffs failed to meet the requirements necessary to obtain an injunction because the township possesses statutory authority to construct town halls. The response attached the minutes from the July 17, 2008, board meeting, in which the board adopted "Township Debt Service Ordinance #071708—01" with no discussion.

Also on April 27, 2009, the trial court held a hearing where the parties presented evidence, including the documents attached to their respective pleadings, the agenda for the 2008 board meeting, Ordinance #071708—01 (a 38-page document), and testimony. Specifically, defendants presented the testimony of Dina Frigo, the township's clerk. Frigo was present at the 2007 township meeting and recalled that the motion unanimously passed to grant authority to the board to purchase real estate property for the purpose of constructing a new township site. Nevertheless, she agreed that there were 11 people present at that meeting and that the agenda did not in any manner reflect that there would be discussion regarding the purchase or construction of a town hall. Frigo also testified that she was present at the 2008 board meeting, for which there was published a public notice. She agreed, however, that, although the purpose of an agenda is to advise the general public as to what will transpire at the board meeting, the 2008 board meeting agenda did not reference the purchase or construction of a town hall or other building. Finally, Frigo testified that, on April 14, 2009, there were 70 votes in favor and 70 votes opposed (with some electors choosing not to vote) to the construction of the town hall. Frigo was asked if she recalled any other board or township meeting where a vote was taken specifically to approve the construction of a new town hall. Frigo mentioned the 2007 township meeting, but conceded that the 2007 vote concerned the purchase of real estate and not the construction of a town hall.

Defendants next presented John Rossi, the township's supervisor. Rossi testified that, after the 2008 board meeting, the township incurred $288,000 to $300,000 in expenses with respect to the construction of the town hall. Those costs included the purchase of the property, an architect's fees, a project manager's fees, property management costs, surveying costs, and legal fees.

At the conclusion of the hearing, the trial court heard argument and continued the temporary restraining order until May 4, 2009. On that day, the court granted the preliminary injunction. The court found first that it possessed jurisdiction over the matter because the acts sought to be enjoined were not legislative, but, rather, were taken pursuant to an ordinance that plaintiffs alleged was either illegal or void. The court also found that plaintiffs were not guilty of *laches*.

Next, the court held that defendants were enjoined "from taking any further steps in either the acquisition of real estate, the construction of a town hall, or the creation or incurrence of debt for the purpose of constructing a new town hall." The court (relying upon *Haggard v. Fay*, 255 Ill. 85 (1912)) found that the township clerk must provide appropriate statutory notice of all matters to be decided by electors at an annual township meeting and that the failure to provide such notice renders void any actions thereafter passed upon by the electors. The court further found that the public notice for the 2007 town meeting contained no mention of any action to be taken on the construction of a new town hall, the acquisition of real estate, or the incurrence of debt. Although the minutes reflected action that authorized the board to purchase real estate for the purpose of constructing a new township site, there was no notation in the minutes as to the precise meaning of "a new township site."

As for the public notice for the 2008 board meeting, the agenda contained as item "VII" "071708—01 Township Debt Service Ordinance," but there was no mention of its purpose or to what type of debt it referred. The court found that "[a] fair reading of the public notice relating to the [2008 board meeting] would not disclose the aims, purposes, or objectives of that ordinance," particularly given that the ordinance itself involved the approval of an installment purchase agreement, the building and equipment of a facility for township use ("I suppose, a/k/a a new town hall"), and the issuance of $3.5 million worth of debt certificates. The court concluded that the notices were "completely and totally inadequate to convey any meaningful information to the electors *** about what the [board] was proposing to do." The court further stated that "this was either a case of rather sloppy preparation, a failure to attend to detail, or a lack of knowledge about the requirements of the statute. On the other hand, it could,

and I hope this is not the case, be a deliberate attempt to \*\*\* hide the ball."

The court noted that, on February 26, 2009, the requisite number of electors filed a petition for a referendum on the issue of constructing a new town hall. Thereafter, at the 2009 town meeting, approximately 158 people were present. When the question of whether the township would be authorized to construct a new township building was presented to the electors, the vote was tied. The court noted that section 40—15(a) of the Township Code (Code) (60 ILCS 1/40—15(a) (West 2006)) requires a majority of electors present and voting at an annual meeting to approve a question and found, therefore, that the measure did not pass by a majority vote. The court concluded that the electors did not approve the construction of a town hall, that the actions taken at the 2007 township meeting and 2008 board meeting were void, and that "there is a clear indication that the petitioners in this case will be successful on the merits." Defendants appeal.

### B. Appeal No. 2—09—0592 (Second Injunction)

On May 4, 2009, immediately after the trial judge announced his ruling and issued the first preliminary injunction, the following dialogue between defense counsel and the court ensued:

"COUNSEL: Judge, just so I'm clear, this order does not bar the board from placing additional items on the agenda, for example, to approve the construction of a town hall.

THE COURT: They can move forward from here if they start at base one again.

COUNSEL: Yes. Okay.

THE COURT: Which is the practical effect of this order.

COUNSEL: Yes.

THE COURT: Or this ruling. What I am doing is the enjoining of future acts based upon past actions that they think they approved lawfully. It's my opinion that the notice was inaccurate and inadequate, and that the vote taken—the actions taken were void. Now, they can go back to base one and start all over again, yes."

Less than three weeks later, on May 21, 2009, plaintiffs filed a third motion for an emergency temporary restraining order and a second amended complaint.[2] Plaintiffs alleged in the motion that, despite the court's injunction and the fact that the electors had not

---

[2]The second amended complaint changed the named defendants. Plaintiffs deleted the original defendants and amended the pleading to name as defendants Linda Moore, as Grafton Township supervisor, Gerry McMahon, Rob LaPorta, Barbara Murphy, and Betty Zirk as township trustees, and Dina Frigo as Grafton Township clerk.

approved a town hall via referendum or other method, a board meeting was scheduled for May 21, 2009, for the purpose of approving the construction of a town hall on the Haligus Road property. Plaintiffs requested that the court enter an emergency order prohibiting defendants from pursuing the construction of a town hall or the incurrence of debt for the purpose of constructing a new town hall.

Attached to the second amended complaint was the agenda for the May 21, 2009, board meeting, which reflected the following items to be discussed and voted upon for approval:

"IV. Approval of building/construction of Township Hall at the Haligus Road property.

V. Approval of an ordinance authorizing and providing for an installment agreement for the purpose of paying for the cost of building and equipping a facility for use by the Township and authorizing and providing for the issue of $3,500,000 debt certificate.

VI. Approving and ratifying Ordinance No. 07—1708—0, an ordinance authorizing and providing for an installment purchase agreement for the purpose of paying for the cost of building and equipping a facility for use by Grafton township and providing for the issue of $3,500,000 in debt certificates."

Plaintiffs alleged in the complaint that the board was without legal authority to approve the construction of a town hall and to incur indebtedness in excess of 10 years. According to plaintiffs, the ordinances referenced in the agenda provided for the repayment of debt incurred by the township to construct the town hall over 20 years. Plaintiffs further noted that the electors had filed with the clerk a petition requesting that the issue of construction of a town hall be submitted to voters via a referendum in the next election. Plaintiffs alleged that Frigo had failed to certify the proposition to the proper election officials. Plaintiffs requested that the court order Frigo to certify the proposition in the petition to the proper election authorities.

On May 21, 2009, the parties appeared before the trial court. Plaintiffs' counsel noted that no verified answer had been filed in the case and that the allegations in the complaint should be considered admitted. The trial court granted leave to plaintiffs to file the second amended complaint and noted that defendants automatically had 21 days to answer. As to the temporary restraining order, defense counsel asked the court to take judicial notice of the response filed to the first temporary restraining order. Counsel informed the court that counsel understood that the court's prior decision found fault with the notices and argued that the most current agenda provided clear and specific

information. In addition, counsel informed the court that there are three grants of power allowing a township to build a new building. The court stated, "[e]xcuse me for interrupting but there is absolutely no question in this case of the township's authority to do these things. \*\*\* The question here is have they exercised that authority in a lawful manner." Counsel argued that the board had lawful authority to take the noticed legislative action and that the temporary restraining order should be denied.

The court granted the temporary restraining order. It reiterated that it had previously found that the "seminal act," the notice of the 2007 township meeting, was legally insufficient to permit the township to embark upon the project and that all of the actions taken pursuant to the authority allegedly given by that notice were void. "This is an attempt to tap dance around the previous order of this court. \*\*\* My specific order \*\*\* enjoined [the township] from taking any further steps in the acquisition of real estate, the construction of a town hall, or the creation or incurrence of debt for the construction of a new town hall. \*\*\* These ordinances [on] this notice \*\*\* violate that finding."

On May 28, 2009, defendants filed a response to, and a motion to vacate, the temporary restraining order.[3] That same day, a hearing was held on the preliminary injunction pertaining to the meeting that had been scheduled (but had apparently not taken place) for May 21, 2009. Plaintiffs' counsel reasserted that no verified answer had been filed in the case, a condition precedent to defendants' ability to present evidence, and that the preliminary injunction should be entered based upon the pleadings. Defendants' counsel reasserted that counsel had believed that the court's prior order was based upon improper notices but that the board could move forward if it started over. The court then stated that by "base one" it meant that the project must be authorized by the township electors and could not be approved by only the board at a board meeting. "Everything flows from the initial problem in April of [2007]."

Defendants' counsel stated that the board understood the court's direction to mean that it could start over again by properly noticing the items on their board meeting agenda. The court replied, "that was not my intention. When I said base one, I meant \*\*\* going back to an annual meeting and having a vote by the electors of the township.

---

[3]That same day, plaintiffs moved to amend all pleadings to delete the individually named defendants and to substitute in their place "GRAFTON TOWNSHIP, a body politic." The record does not reflect whether this motion was ruled upon.

That is base one. (Indiscernible) referred to is a proper meeting notice, which would indicate to the electors that at the annual meeting steps were being taken for the acquisition of real estate, the approval of a contract and ultimately the issuance of debt." The court stated that it would issue the preliminary injunction in the absence of an answer. The trustees were enjoined until further order of the court, from taking any action "on the approval of contract[s], acquisition of property, [or] incurrence of debt for the construction of a new town hall."[4] Defendants appeal.

## II. ANALYSIS

### A. Motion to Strike

■ We note first that, in their reply brief, defendants move to strike plaintiffs' statement of facts as improperly argumentative in contravention of Supreme Court Rule 341(h)(6) (210 Ill. 2d R. 341(h)(6)). We decline to do so. Plaintiffs' two-page statement of facts consists largely of quoted portions of the record. To the extent that plaintiffs insert argument or commentary regarding those facts, they frame it as responsive to allegedly inappropriate characterizations made by defendants in *their* statements of facts. We will review the briefs as submitted and ignore those portions that contain inappropriate matter.

### B. Subject Matter Jurisdiction

■ Defendants, relying on *Fletcher v. Paris*, 377 Ill. 89 (1941), and *Stevens v. St. Mary's Training School*, 144 Ill. 336 (1893), next argue that the trial court lacked subject matter jurisdiction to enjoin legislative action, *i.e.*, the letting of contracts for the construction of a town hall and action on the agenda items for the 2009 board meeting.

Defendants' reliance on *Fletcher* and *Stevens* is misplaced: *Fletcher* held that courts may not enjoin the holding of an election (*Fletcher*, 377 Ill. at 98); *Stevens* held that courts should restrain the enforcement, rather than the passage, of unauthorized orders, resolutions, or ordinances (*Stevens*, 144 Ill. at 351). Indeed, there is a distinction between enjoining legislative action and enjoining action taken in accordance with unauthorized legislative action. See, *e.g.*, *Thompson v. Mahoney*, 136 Ill. App. 403, 406 (1907) ("[t]o enjoin an election about to be held that would be void is not the proper procedure, but an injunction will lie to restrain the carrying out of any of the proposi-

---

[4]The written order directed counsel for the parties to file a supplemental order after reviewing the transcript from the hearing, and it continued the matter until June 11, 2009, for entry of such supplemental order. That order, if it was prepared and filed, does not appear in the common law record.

tions voted for at a void election"). Here, the trial court twice enjoined actions taken in accordance with two legislative actions it determined were void, *i.e.*, the vote at the 2007 township meeting and the ordinance passed at the 2008 board meeting. Having found those actions void, the court enjoined any further action based upon the "tainted" legislative actions. However, the court made clear that it was not enjoining defendants from proceeding from "base one," meaning that defendants could execute their legislative functions so long as those actions were not premised upon the invalid 2007 and 2008 actions. Accordingly, we reject defendants' jurisdictional argument.

## C. Injunctions

A preliminary injunction acts to preserve the status quo pending a decision on the merits. *Callis, Papa, Jackstadt & Halloran, P.C. v. Norfolk & Western Ry. Co.*, 195 Ill. 2d 356, 365 (2001). To obtain a preliminary injunction, the movant must establish: (1) a clear right or interest that needs protection; (2) no adequate remedy at law; (3) that irreparable harm will result without the injunction; and (4) a reasonable likelihood of success on the merits. *Callis*, 195 Ill. 2d at 365-66. The trial court must also consider whether the balance of hardships to the parties supports granting the injunction. *Bollweg v. Richard Marker Associates, Inc.*, 353 Ill. App. 3d 560, 572 (2004). The party seeking injunctive relief does not carry the same burden of proof that is required to prevail on the ultimate issue. *Bollweg*, 353 Ill. App. 3d at 572. Instead, "the [movant] must make a *prima facie* showing that there is a fair question about the existence of the claimed right and that the circumstances lead to a reasonable belief that the [movant] will be entitled to the relief sought." *Bollweg*, 353 Ill. App. 3d at 572.

On appeal, we do not examine the controverted facts of the case. *Limestone Development Corp. v. Village of Lemont*, 284 Ill. App. 3d 848, 854 (1996). We will not overturn the decision to grant a preliminary injunction absent an abuse of discretion. *Bollweg*, 353 Ill. App. 3d at 572. Where the court's ruling involved a question of law, our review is *de novo. Jones v. Department of Public Aid*, 373 Ill. App. 3d 184, 193 (2007).

Before addressing the merits of the granted injunctive relief, we address plaintiffs' argument that defendants' failure to file a verified answer to the complaint, amended complaint, or second amended complaint required the trial court to grant the injunctions based solely on the sufficiency of the complaints and not with consideration of evidence. They suggest that we should do the same. We disagree. First, the nature of injunctive proceedings is necessarily expedient and, instead of a verified answer, defendants filed two responses to

plaintiffs' motions for restraining orders. The first response was heard at the first preliminary injunction hearing, where evidence was presented with no objections from plaintiffs. The second response incorporated the first response and, although plaintiffs mentioned to the court that defendants had not yet answered, the court noted that plaintiffs were amending their complaint and that defendants would automatically have 21 days to respond. Accordingly, we find no fault with the trial court's consideration of evidence in these preliminary injunction proceedings.

In seeking to vacate the preliminary injunctions, defendants must prove that the trial court abused its discretion because plaintiffs present no fair question as to the legal rights involved. *People ex rel. Stony Island Church of Christ v. Mannings*, 156 Ill. App. 3d 356, 362 (1987). Defendants have not met this standard. Of the four required showings needed to obtain a preliminary injunction, defendants argue only that plaintiffs are unable to establish a reasonable likelihood of success on the merits. Specifically, defendants argue that three statutory grants of authority give the board power to finance and construct new buildings. Defendants point first to section 17(b) of the Local Government Debt Reform Act, which grants governing bodies the authority to enter into installment contracts for the purchase of property through agreements that provide for payment over a period not to exceed 20 years. 30 ILCS 350/17(b) (West 2006). Next, defendants point to sections 85—10(c) and (d) of the Code, which grant a township the authority to construct a town hall under contracts providing for payment over a period not exceeding 10 years and provide that a township may make all contracts necessary in the exercise of its powers. 60 ILCS 1/85—10(c), (d) (West 2006). Finally, defendants point to section 8 of the Statute on Statutes, which provides that it grants to government entities powers supplementary to those found in the Local Government Debt Reform Act and provides that all instruments providing for the payment of money executed by any governmental entity are valid and legally binding obligations of that entity. 5 ILCS 70/8 (West 2006). Defendants conclude that, in contrast, plaintiffs have no express power to authorize the construction of a town hall. Therefore, defendants argue, the court erred in granting the first preliminary injunction because it improperly found relevant the specificity of the agendas for the township and board meetings. Accordingly, defendants assert that the town hall and its financing were properly approved at the 2007 township and 2008 board meetings. Defendants argue that the court also erred in granting the second preliminary injunction because, again, the 2007 and 2008 actions were lawful and, in any event, the notice for the 2008 board meeting was sufficiently specific.

As noted by the trial court, there is no question that the aforementioned statutory authority grants a township authority to purchase property, finance and construct a town hall, or enter into contracts. But, a township cannot act on its own; rather, a township acts through its electors or its elected board officials. See 1996 Ill. Att'y Gen. Op. No. 96—019. Thus, the question the court faced here was whether the aforementioned statutory provisions grant a township board the authority to approve the construction and financing of a town hall without adequate notice or, following the filing of a petition, a majority vote by the electors. We review *de novo* this question of law and conclude that the trial court did not err in finding that the board, with proper notice to the electors, may act unless or until the electors file a petition pursuant to section 140—5 of the Code.

Section 140—5 of the Code provides:

"(a) Whenever it is desired to build, purchase, or lease, for a longer period than 10 years, a township hall *** at least 25 electors of the township *may*, before the time of giving notice of the annual township meeting, file with the township clerk a petition in writing that the proposition of building, purchasing, or leasing a township hall *** and issuing bonds for the building, purchase, or lease be submitted to the voters of the township at the next ensuing general election. *** The petition shall be filed in the office of the township clerk.

(b) The township clerk *shall* certify the proposition to the proper election officials, who shall submit the proposition to the legal voters of the township at an election in accordance with the general election law." (Emphases added.) 60 ILCS 1/140—5 (West 2006).

The impact of section 140—5 on a township board's authority to construct a town hall was considered by the First District in *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 106 (1997). There, the court considered whether a township board may unilaterally decide to construct an addition to its town hall where, at an annual township meeting, a slim majority of the township's electors voted to rescind the board's prior action to construct the addition and incur expenses in relation thereto. *Baldacchino*, 289 Ill. App. 3d at 106. The court noted that the Code provides a form of government where a township's legislative powers are shared by the elected town officials, who comprise the township board, and the "electors," the townspeople who are present and vote at the annual town meeting. *Baldacchino*, 289 Ill. App. 3d at 110. However, the court noted, the question whether the decision to construct an addition to the town hall falls within the scope of authority afforded the board or the electors is not clearly answered in the Code. In other words, although the "town" may

construct a town hall, whether the electors or the board has authority over such construction is not specified. *Baldacchino*, 289 Ill. App. 3d at 112.

The court noted that, in *Evers v. Collinsville Township*, 269 Ill. App. 3d 1069, 1072-73 (1995), the Fifth District stated that township electors' enumerated powers do *not* include the authority to construct a town hall; rather, the township supervisor has specific legislative authority to contract for the construction of a town hall. However, the *Baldacchino* court concluded that the statements in *Evers* were merely *dicta* because *Evers* actually involved an individual citizen's challenge to board action and, therefore, the court did not need to fully consider the powers of two entities (the board and the electors). *Baldacchino*, 289 Ill. App. 3d at 112-13. In contrast, the *Baldacchino* court squarely faced the question whether the Code gives the electors any greater authority over the decision to construct a town hall than it does the board. The court noted that section 140—5(a) *requires* that, when a township desires to build a town hall and must borrow money and issue a bond for that purpose, electors present the matter at the annual meeting and issue a referendum on the matter; this suggests that the electors, not the board, must determine whether a town hall addition may be built. *Baldacchino*, 289 Ill. App. 3d at 113. Therefore, the court concluded that "a close reading of the [Code] tends to support the electors' position that the construction of a town hall is an area in which the [board] has no independent power, but must act only upon direction of the electors." *Baldacchino*, 289 Ill. App. 3d at 113.

We agree with *Baldacchino* in part. As defendants note, *Baldacchino* framed section 140—5 as mandatory, when, in fact, it provides that the electors "may" act to have presented via referendum the question of building a town hall and issuing bonds for that purpose; this suggests that a referendum is not the *exclusive* method for constructing and financing a new building. However, we agree with *Baldacchino* to the extent that it holds that section 140—5 grants some authority to the electors regarding the construction and financing of a town hall and, thus, that the board does not have exclusive authority in that domain. See also 1996 Ill. Att'y Gen. Op. No. 96—019 (township electors may exercise those powers delegated to them by statute or those implied powers that are essential to the exercise of the powers that have been expressly granted). We agree with the trial court here that the board, *with* proper notice to the electors, may act unless or until township electors file a petition pursuant to section 140—5 of the Code.

■ We reject defendants' arguments that: (1) the town hall and its financing were properly approved, without a referendum and before

the section 140—5 petition was filed, at the 2007 township and 2008 board meetings; (2) the agendas for those meetings were irrelevant; and (3) in the event that the notices were relevant, any problems in the sufficiency of the notices were cured for the May 2009 board meeting and, therefore, the court erred in issuing the second injunction. First, section 140—5(a)'s language that the electors "may" act presumes notice that the township might wish to construct and finance a new town hall. Here, the trial court did not abuse its discretion in finding that no notice was given until *after* the 2008 meetings. Section 30—10 of the Code requires that notice of a township meeting and the agenda, as approved by the board, must be provided at least 10 days prior to the meeting. 60 ILCS 1/30—10 (West 2006). In *Haggard*, our supreme court held that, where the township clerk posted notices of an annual township meeting that made no reference to the question of building a town hall, there was insufficient compliance with the notice requirement and the vote taken at the township meeting where the requisite notice had not been given was void. *Haggard*, 255 Ill. at 88-90. Accordingly, we cannot find unreasonable the court's conclusion that a fair question was presented that the 11-person vote at the April 10, 2007, township meeting did not lawfully reflect approval of construction of a town hall because: (1) the agenda for the 2007 township meeting made no mention whatsoever of any pending discussion regarding purchasing a building; and (2) the meeting minutes reflect that the vote pertained to purchasing real estate for a "township site." Nor do we find unreasonable the court's finding that a fair question was presented whether the board's adoption of the debt ordinance at the 2008 board meeting, which was premised upon the 2007 meeting vote, was unlawful, given that the agenda for that meeting provided no information to township electors of the purpose of item "VII," "071708—01 Township Debt Service Ordinance," or the debt to which it referred.

Plaintiffs *did* choose to file the section 140—5(a) petition when they became aware of the board's intent to construct and finance a new town hall. In interpreting a statute, our primary objective is to give effect to the legislature's intent. *Lacey v. Village of Palatine*, 232 Ill. 2d 349, 361 (2009). The most reliable indicator of legislative intent is the language of the statute. *Lacey*, 232 Ill. 2d at 361. In that vein, after the section 140—5(a) petition is filed, section 140—5(b) requires that the township clerk "shall" certify the proposition for submission to the voters at the next election. Accordingly, when plaintiffs filed their petition in accordance with section 140—5(a), the subject of constructing and financing a new town hall became a *mandatory* proposition for submission to voters via section 140—5(b). Defendants

ignore the impact of plaintiffs' petition, focusing instead on the discretionary nature of section 140—5(a). There is no doubt that section 140—5(a), through the use of the word "may," is discretionary, but, when, as here, electors in their discretion *do* file the petition, section 140—5(b) *mandates* submission of the question to the electorate. We note that defendants' interpretation of section 140—5(a)—suggesting that a township board may proceed to construct and finance a new town hall even when a section 140—5(a) petition has been filed— would effectively render section 140—5(b) meaningless. Also notable, of course, is that, subsequent to the filing of the petition and at the 2009 annual meeting, the question of whether to construct the town hall did not pass by majority vote.

Accordingly, the trial court did not abuse its discretion in finding that plaintiffs made a fair showing of the existence of a claimed right. The court did not abuse its discretion in granting the first injunction where a section 140—5(a) petition was filed and the preceding board actions were taken without any adequate prior notice thereof. Nor did the court abuse its discretion in granting the second injunction, where the aforementioned circumstances had not changed. Defendants argue that the notice for the May 21, 2009, board meeting *was* sufficiently detailed and, therefore, the court erred in issuing another injunction. This, however, ignores the fact that a section 140—5(a) petition remained pending. Plaintiffs, in their second amended complaint, requested an order that Frigo certify the section 140—5(a) petition's question for the November 2010 election. The court found the request premature, in light of the questions we address here, and did not hold a hearing on that issue. We presume that a hearing on that issue and compliance with the statute will follow this opinion. We affirm the court's issuance of both injunctions.

## D. Scope of Relief

Finally, defendants argue that the court abused its discretion because the injunctions exceeded the relief requested by plaintiffs. Specifically, defendants argue that plaintiffs requested only that defendants be enjoined from: (1) proceeding in any manner to cause construction of a town hall without first bringing the matter before a meeting of electors; and (2) taking any action to approve bids or issue construction contracts. However, defendants argue that the court's injunctions effectively permanently enjoined the board from exercising its legislative authority and declared void the ordinance approving the issuance of $3.5 million in debt certificates.

We disagree that the injunctions improperly exceeded the scope of the requested relief. Defendants assert that plaintiffs requested relief

enjoining the board from "proceeding in any manner" to construct the town hall, and the trial court enjoined defendants from "taking any further steps *** for the purpose of constructing a new town hall." Plaintiffs had not requested that the court find the 2008 ordinance invalid; however, that finding formed the basis for the court's decision to grant the requested relief. Moreover, we note that the court made clear that defendants were not *permanently* enjoined from exercising legislative authority regarding the town hall, because, as previously noted, although it held that defendants could not proceed further on the basis of the invalid actions, it emphasized that defendants could start again "from base one." In this sense, the injunctions properly preserved the status quo, *i.e.*, the "situation which represents the last, actual, peaceable, uncontested status preceding the pending controversy." *Jones*, 373 Ill. App. 3d at 193.

## III. CONCLUSION

For the foregoing reasons, the judgments of the circuit court of McHenry County are affirmed.

Affirmed.

HUTCHINSON and SCHOSTOK, JJ., concur.