2021 IL App (1st) 201298-U
No. 1-20-1298

SECOND DIVISION
April 15, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOSEPH MAKULA, | ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 20CH5362 |
| | ) | |
| MARLENE J. VICTORINE, in her capacity as Village Clerk for the Village of Niles, Illinois, | ) | The Honorable Paul A. Karkula, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1     *Held:* circuit court order entering a judgment of *mandamus* affirmed where the plaintiff commenced the action in a timely manner and established each of the three elements necessary to obtain *mandamus* relief.

¶ 2     Defendant Marlene J. Victorine, the Village Clerk (Clerk or Village Clerk) of the Village of Niles (Village), appeals a circuit court order granting plaintiff, Joseph Makula's complaint for *mandamus* and ordering her to certify his proposed referendum question and include it on the April 6, 2021, ballot.  For the reasons explained herein, we affirm the judgment of the circuit court.

¶ 3     BACKGROUND

¶ 4     In 2009, the Village's Board of Trustees passed an ordinance creating an ethics board comprised of five members appointed by the Village Trustees.  On November 4, 2019, Makula filed a petition with the Village Clerk "pursuant to Article VII, Section 6 of the Illinois Constitution and section 28-7 of the Illinois Election Code" seeking to place a referendum on the upcoming November 3, 2020, ballot.  The proposed referendum addressed the makeup of the Village's ethics board and sought to make the members of the board elected, rather than appointed, officials. Specifically, Makula's proposed referendum posed the following question:

"Shall the five[-] member Village of Niles Ethics Bard be Elected by the Voters of Niles in the following manner?

1.   All five positions will be filled at the consolidated General Election of April 6, 2021.

2.  At the April 6, 2022 Election, three positions will be for two year terms, the other two positions will be for four year terms.

3.  At all subsequent elections the full term of this office will be for four years.

4.   Board vacancies will be filled at the next possible election.

5.  Candidates for this office must be registered voters of Niles, must not be Village of Niles contractors, employees, claimants, or members of other Village of Niles boards or commissions.

6.  The terms of current appointed Ethics Board members shall terminate upon certification of April 6, 2021 Ethics Board election results.

7.  Candidates for this office shall not run as parties or slates, but must run independently, and must submit an election petition signed by one hundred or more Niles Voters.

8. The Chairman of the Ethics Board will be one of the Elected Board members selected thr[ough] election by Ethics Board members for a one[-]year term.

9. No person shall be a candidate for Ethics Board Trustee if they have served in this office for eleven and one half years or more.

10. This binding Referendum shall be effective upon passage by the Voters of Niles."

¶ 5 The petition was supported by the signatures of 1,147 registered voters. On July 13, 2020, the Clerk responded with a letter declining to certify Makula's public question and include it on the November 3, 2020, election ballot. She explained her rationale as follows:

"The Village's Ethics Board is an advisory body to the Board of Trustees. Its members do not hold a public office and their selection is not the appropriate subject of an Article VII, Section 6(f) referendum. Accordingly, the petition is not in apparent conformity with the provisions of the Election Code. Because it is not in apparent conformity, I am not required to certify the public question to referendum pursuant to Section 10-8 of the Illinois Election Code (10 ILCS 5/10-8). For this reason, I will not certify the public question for inclusion on the ballot for the November 3, 2020 General Election."

¶ 6 On August 12, 2020, Makula filed a verified complaint for *mandamus* in the circuit court. In his complaint, he alleged that his petition for referendum had been supported by the requisite number of registered voters, that no objections had been filed against his petition, and that the Village Clerk exceeded her authority pursuant to section 10-8 of the Election Code (10 ILCS 5/10-8 (West 2018)) when she determined that his petition was not in "apparent conformity" with Election Code requirements and declined to include his referendum on the ballot.

¶ 7 The Clerk was served with notice of Makula's lawsuit on August 26, 2020, and filed her appearance on September 3, 2020. Thereafter, on September 8, 2020, Makula filed a motion

seeking to expedite consideration of his *mandamus* claim. It does not appear that the motion was ruled upon; however, the cause was transferred from the circuit court's Chancery Division to its County Division on September 15, 2020.

¶ 8        On September 30, 2020, the Village Clerk filed a motion to dismiss Makula's complaint for *mandamus* pursuant to section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619 (West 2018)). In her motion, the Clerk disputed the timeliness of Makula's complaint and argued that it was barred by the doctrine of *laches*. Specifically, she noted that Makula had waited almost a month after she sent him a letter denying his request to include his proposed referendum before initiating his *mandamus* action and that the statutory deadlines for certifying the November 3, 2020, ballot and mailing them to military and overseas voters had already lapsed.[1] Because Makula "did not act more quickly" she contended his complaint was "barred by the doctrine of *laches*." Notwithstanding the timeliness issue, the Clerk further argued that Makula "did not have a right to have [his] referendum question certified because it seeks to accomplish something through referendum that voters cannot accomplish." Specifically, she argued that Makula's referendum, which sought to change the way in which members of the Village's ethics board were selected, "encroach[ed] upon the Village's right to establish its own committees" and that there was no "lawful support *** for the position that the electors in a municipality can compel a municipality to establish a committee or dictate who can serve on the committee, how committee members are established, etc." Because she had no duty to certify an "improper question" and include it on the

---

[1] According to the Village Clerk, the date for certifying the November 3, 2020, ballot was August 24, 2020, the statutory deadline for "readying" ballots for military and overseas voters was September 18, 2020, and the statutory deadline for mailing those ballots was September 19, 2020.

ballot, the Clerk argued that Makula was "not entitled to a writ of *mandamus*" and that his complaint should be dismissed.

¶ 9        In response, Makula disputed the Clerk's invocation of the *laches* doctrine and the timeliness of his filing.  In doing so, he noted that his complaint was filed less than a month after he received her letter refusing to include his referendum on the ballot whereas she "took more than eight calendar months to study the petition before notifying [him] that she was declining to certify the question for ballot inclusion on the basis of a lack of apparent conformity with the provisions of the Election Code."  As such, Makula contended that she did "not have clean hands" and could not avail herself of a *laches* defense.  Although he acknowledged that the timing of the action and the delays resulting from the COVID-19 pandemic made it impossible to include his referendum on the November 3, 2020, ballot, Makula argued that it should be included on upcoming the April 6, 2021, ballot.  Makula also disputed the Clerk's claim that his referendum was "improper" and infringed on the Village's sovereign powers.  He argued that the members of the Village's ethics board possessed characteristics consistent with those associated with "public office," and as such the makeup of the ethics board was a proper subject for a referendum.  Finally, he argued that pursuant to the Election Code, local election authorities have "limited discretion" to determine whether a referendum petition is in "apparent conformity" with the law by examining the petition on its face (10 ILCS 5/10-8, 18-15 (West 2018)) and that the Village Clerk exceeded her authority when she declined to include his referendum on the ballot because the document, on its face, complied with statutory requirements.  As such, Makula urged the circuit court to deny her motion to dismiss and to enter a judgment of *mandamus* against her.

¶ 10    On October 27, 2020, following oral argument on the matter, the transcripts of which do not appear in the record on appeal,[2] the circuit court entered a written order denying the Village Clerk's motion to dismiss and entering a judgment of *mandamus*. Specifically, the order provided as follows:

"The Court finds that[:] 1] Plaintiff timely filed a petition for a referendum to be placed on the 11/3/2020 General Election ballot. 2] The petition, on its face, was in apparent conformity with all provisions and requirements set forth in the Illinois Election Code. 3] Defendant did not certify the referendum question to be placed on the ballot. Wherefore, the Court orders as follows[:] A) Defendant's Motion to Dismiss pursuant to 735 ILCS 2/5-619(a)(9) is denied. B) A Judgment of Mandamus is entered against Defendant. C) Defendant shall certify the public question for the 4/6/2021 ballot."

¶ 11    The Village Clerk appealed the propriety of the circuit court's order. While the appeal remained pending and in accordance with the court's judgment of *mandamus*, the Clerk included the certified question on the April 6, 2021, ballot. On April 2, 2021, days before the election, the Clerk filed an emergency motion seeking to suppress the upcoming election's results. In its motion, the Clerk observed that this court had not yet resolved the substantive merit of the appeal and requested this court to order the Cook County Clerk to "suppress the

---

[2] Due to the COVID-19 pandemic, it appears the hearing occurred over Zoom. The record contains an affidavit completed by one of the Village Clerk's attorney's who averred: "There is no report of proceedings included in this record as no transcript of any hearing in this matter exists. No trial exhibits exist either." We note that the lack of transcripts did not prevent the appellant from compiling a bystander's report in accordance with Illinois Supreme Court Rule 323(c) (eff. July 1, 2017); however, appellant did not do so. Although the parties' filings are present in the record, this court does not know exactly what evidence or arguments were presented during the hearing. Under such circumstances, a reviewing court will presume that the circuit court acted in conformity with the law and ruled properly after considering the evidence with which it was presented absent affirmative evidence to the contrary. See *Pate v. Wiseman*, 2019 IL App (1st) 190449, ¶ 18.

unofficial election results for [Makula's] referendum question" and "stay the final canvas and proclamation of results for [Makula's] referendum question until the Court rules on this appeal because" publication of the unofficial results and certification of those results "will cause significant public confusion if the Court ultimately holds [his] question is invalid." In response to the Village Clerk's emergency filing, this court entered an order on April 5, 2021, that provided, in pertinent part, as follows:

"The votes cast in the consolidated Election on April 6, 2021, in Niles, Illinois in the matter in which members of the Niles, Illinois, Board of Ethics are selected shall be sequestered by ballot officials, including the Clerk of the County of Cook in her official capacity as an election official and the Village Clerk and officials of the Village of Niles, Illinois to the extent that the ballots ON THAT ISSUE ONLY shall not be counted and shall not me made public unless and until the appeal pending before the Illinois Appellate Court, 1st District in case 1-20-1298 is complete and mandate has been issued."

¶ 12    ANALYSIS

¶ 13    On appeal, the parties dispute the propriety of the circuit court's judgment denying the Village Clerk's motion to dismiss and issuing a writ of *mandamus* that required the Clerk to include Makula's referendum on the April 6, 2021, ballot.

¶ 14    "*Mandamus* relief is an extraordinary remedy that is used to compel a public officer to perform a mandatory and nondiscretionary official duty." *Pitts v. Kolitwenzew*, 2020 IL App (3d) 113676, ¶ 20 (citing *McFatridge v. Madigan*, 2013 IL 113676, ¶ 17). In order to prevail on a claim seeking *mandamus* relief, it is incumbent upon the plaintiff to establish that: (1) he has a clear right to the requested relief; (2) the public official involved has a clear duty to act; and (3) the public official has clear authority to comply with an order granting *mandamus* relief. *McFatridge*, 2013 IL

113676, ¶ 20; *Pate*, 2019 IL App (1st) 190449, ¶ 26. "[M]andamus may not be used to compel a public officer to perform an act that involves the exercise of the officer's discretion or to direct the manner in which a discretionary act is performed, even if the officer's discretion has been exercised erroneously." *Pitts*, 2020 IL App (3d) 190267, ¶ 20. Instead, *mandamus* relief is "proper only when the acts compelled are 'purely ministerial' and 'require no exercise of judgment.' " *Mabwa v. Mendoza*, 2014 IL App (1st) 142771, ¶ 36 (quoting *Baldacchino v. Thompson*, 289 Ill. App. 3d 104, 109 (1997)).

¶ 15        As this court has previously noted, the relevant standard of review in *mandamus* cases is "unclear." *Pate*, 2019 IL App (1st) 190449, ¶ 27. Some courts have employed an abuse of discretion standard (*Id.* (citing *Crump v. Illinois Prisoner Review Board*, 181 Ill. App. 3d 58, 60 (1989)) and have held that a trial court's *mandamus* ruling will not be disturbed unless it is arbitrary, fanciful, or where no reasonable person would agree with the court's position (*Id.* ¶ 28). Other courts, in contrast, have held that a trial court's decision to grant or deny a writ of *mandamus* will not be disturbed unless its ruling is against the manifest weight of the evidence (*Id.* ¶ 27 (citing *Baldacchino*, 289 Ill. App. 3d at 109)), *i.e.*, only where the opposite conclusion is clearly apparent or where its ruling is unreasonable, arbitrary, or not based on the evidence (*Id.* ¶ 28). Our supreme court, in turn, "has stated that the 'issuance of a writ of *mandamus*' is 'discretionary in nature' and where there is no clear evidence that the circuit court's order was incorrect, mandamus 'will not lie.' " *Id.* ¶ 27 (quoting *People v. Latona*, 184 Ill. 2d 260, 277-78 (1998)). We need not resolve this issue, as we would reach the same result under either standard. *Id.* ¶ 28.[3]

---

[3] We note that the Village Clerk argues that this case involves issues of statutory interpretation, which are subject to *de novo* review; however, it is clear from the substance of the appeal that she is challenging the circuit court's decision to enter a judgment of *mandamus*. As such, her attempt to invoke the *de novo* standard is unavailing. See, *e.g., Pate*, 2019 IL App (1st) 190449, ¶ 24 (rejecting the appellant's attempt to invoke a *de novo* standard by classifying the issue

¶ 16    Section 28-7 of the Illinois Election Code provides a mechanism by which public questions may be initiated, certified, and effectuated "subject to approval by referendum." 10 ILCS 5/28-7 (West 2018). Specifically, it provides that "[a]ny *** public question may be initiated by the governing body of the unit of local government by resolution or by the filing with the clerk or secretary of the governmental unit of a petition signed by a number of qualified electors equal to or greater than 8% of the total votes cast for Governor in the preceding gubernatorial election, requesting the submission of the proposal for such action to the voters of the governmental unit at a regular election." *Id.* A petition initiating a public question may specify the election at which the question is to be submitted; however, specification of an election date is not absolutely required unless the petition is submitted pursuant to a specific statute requires submission at a public election. 10 ILCS 5/28-2(d) (West 2018).

¶ 17    The Village Clerk first argues that the circuit court erred in ordering that Makula's referendum be included on the April 6, 2021, election ballot because his petition initially sought to include the referendum on the November 3, 2020, election ballot. In support, she relies on section 28-2(d) of the Election Code which provides, in pertinent part, that "[a] petition, resolution or ordinance intuiting a public question which specifies a particular election at which the question is to be submitted shall be so limited, and shall not be valid as to any other election, other than an emergency referendum ordered pursuant to Section 2A-1.4" 10 ILCS 5/28(d) (West 2018). Although it is true that Makula's petition sought to include his referendum on the ballot for "the General Election to be held on November 3, 2020," there is no dispute that the Village Clerk's eight month-delay in responding to his petition rendered it effectively impossible to include the

raised on appeal as one involving statutory interpretation where it was evident that the appeal really concerned the trial court's ruling on their complaint for *mandamus*).

referendum on that election date. We note that Makula delivered his petition to the Village Clerk on November 4, 2019, however, she did not respond until she sent a letter to his attorney that was dated July 13, 2020. Makula, in turn, brought filed his mandamus action on August 12, 2020, and by the time that the Clerk filed her motion to dismiss on September 30, 2020, the deadline to certify the November 3, 2020, ballot had lapsed. The record does not show that the delays in this case and the inability to include the referendum on the November 3, 2020, election can be attributed to Makula. Recognizing this fact, the circuit court ordered the referendum to be included on the ballot at the next registered election on April 6, 2021.

¶ 18    Because section 28-2(d)'s election date provision is discretionary and not mandatory and because the inability to include the referendum on ballot of the election it initially sought did not result from any action of Makula, we find no error. See, *e.g., Matter of South Prairie Park District*, 224 Ill. App. 3d 614, 617 (1992) (recognizing that section 28-2(d)'s election specification provision is directory not mandatory and finding that the mere fact that litigation delays prevented the appellees' proposition from being included on the ballot of the specific election day initially sought did not preclude it from being included on the ballot at the next "earliest proper date" where the delays were not attributable to any conduct on the part of the appellees). Indeed, we note that the referendum at issue was already presented to and voted on by the electorate. Although section 28-2(d) of the Election Code provides that when a petition specifies a particular election, it is not valid for any other election, that provision "does not say or even imply that an otherwise valid election is rendered void by failure to strictly comply with this provision." *Id.* Accordingly, we reject the Clerk's claim of error. In doing so, we acknowledge that because Makula initially sought to include his referendum on the November 3, 2020, ballot, the referendum contained references to electing the ethics board members at the

next election, *i.e*., the April 6, 2021, election. Due to the delays, largely attributable to the Clerk, this became impossible since the referendum itself was included on the April 6, 2021 ballot; however, we find that if the electorate votes to change the manner in which the ethics board members are selected, the positions could be filled in a subsequent election.

¶ 19     In a related claim, the Clerk argues that the circuit court erred in rejecting her argument that Makula's *mandamus* action was barred by *laches*. She argues that because he "waited almost a month" after she notified him that she would not be certifying his question and including it on the November 3, 2020, ballot, before he filed his *mandamus* action, the doctrine of *laches* should have barred his claim.

¶ 20     *Laches* is an equitable affirmative defense that precludes a litigant from asserting a claim where there was an unreasonable delay in filing a cause of action which resulted in prejudice to the opposing party. *Madigan v. Yballe*, 397 Ill. App. 3d 481, 493 (2009). A defendant invoking a *laches* defense must show that (1) the plaintiff failed to exercise diligence in initiating the lawsuit and (2) the delay prejudiced her. *Id*. The doctrine of *laches* is "grounded in the equitable notion that courts are reluctant to come to the aid of a party who has knowingly slept on his rights to the detriment of the opposing party." *Tully v. Illinois*, 143 Ill. 2d 425, 432 (1991).

¶ 21     After reviewing the relevant timeline, we find the Clerk's invocation of a *laches* defense both disingenuous and unavailing. As explained above, Makula filed his *mandamus* complaint on August 12, 2020, less than a month after the Clerk sent him a letter dated July 13, 2020, informing him that she had declined to certify his public question and include it on the November 3, 2020, ballot. Although we acknowledge that timeliness is important in election cases, which are subject to specific deadlines, Makula's conduct in filing his complaint for

*mandamus* less than one month after receiving the Clerk's response can hardly be characterized as a lack of diligence. While the Clerk asserts that "time of is of the essence in election cases," and emphasizes that his complaint was filed shortly before the August 24, 2020, statutory deadline to certify the November 3, 2020, ballot, it was she who waited more than eight months after receiving Makula's petition containing his proposed referendum to provide him with a response. To the extent that there was a lack of diligence in this case, it was due to her conduct and not to that of Makula. Accordingly, we conclude that the circuit court did not err in rejecting the Clerk's *laches* defense.

¶ 22    Next, the Village Clerk argues that the circuit court erred in issuing a writ of *mandamus* because Makula "did not satisfy the standards for such extraordinary relief." As set forth above, to obtain *mandamus* relief, a plaintiff must establish that (1) he has a clear and affirmative right to relief; (2) the public official has a clear duty to act; and (3) the public official has clear authority to comply with the writ. *McFatridge*, 2013 IL 113676, ¶ 20; *Pate*, 2019 IL App (1st) 190449, ¶ 26. She first argues that Makula has no clear right in need of protection because "he was seeking to place a question on the ballot to accomplish something that the electors cannot accomplish by referendum" and that his referendum is precluded by both the Illinois Municipal Code and the Illinois State Constitution.

¶ 23    The Clerk first cites section 3.1-40-15 of Illinois Municipal Code, which allows a municipal board to "determine its own rules of proceeding" (65 ILCS 5/3.1-40-15 (West 2020)). Although she acknowledges that nothing in this provision or in any other Municipal Code provision expressly allows a Village Board to establish committees, she submits that the broad language of that provision "leaves the creation and membership of village board committees to the unfettered political discretion of the village board itself" and that "[t]here is no lawful support *** for the

proposition that the electors in a municipality can compel a municipality to establish a committee or dictate who can serve on the committee [or] how committee members are established." She fails, however, to cite to any authority to support the proposition that electors *cannot* change the manner in which the members of a committee duly established by a Village Board can be selected. See Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) (requiring appellant to support each argument with citations to relevant legal authority). Accordingly, we are not persuaded by the Clerk's argument that Makula's referendum is precluded by the Illinois Municipal Code.

¶ 24 The Clerk, however, also argues that Makula's referendum fails as a matter of law because the members of the Village's ethics board are not "public officers" and as such, the referendum violates the Illinois Constitution. She notes that his referendum petition was submitted pursuant to Article VII, Section 6(f) of the Illinois State Constitution, which provides that "A home rule municipality shall have the power to provide for its officers, their manner of selection and terms of office only as approved by referendum or as otherwise provide by law." Ill. Const. Art. VII, § 6. Relying on the Fourth District's decision in *Midwest Television, Inc. v. Champaign-Urbana Communications, Inc.*, 37 Ill. App. 3d 926 (1976), she contends that the Village's ethics board members do not possess the recognized characteristics of public office, and as a result, the "subject matter of [Makula's] [p]etition" is "not proper." In *Midwest Television*, the Fourth District recognized that "[t]he characteristics of public office are generally agreed upon, although the distinction between an office and employment may be vague in particular fact situations" and held that "[t]he characteristics of public office include: (1) creation by statute or constitution; (2) exercise of some portion of the sovereign power; (3) a continuing position, not occasional or contractual; (4) fixed tenure; (5) an oath is required; (6) liability for misfeasance or nonfeasance; and (7) the official has an independence beyond that of employees." *Id.* at 931. Citing the first

characteristic, the Clerk argues that the Village's ethics board's members are not public officers because the board "was not created by statute or the constitution;" rather, it was created by ordinance. Even if this is true, "[n]ot all [the aforementioned] factors are required in order to determine that a position is an office." *Id.* Indeed, aside from a cursory assertion unsupported by legal authority that the ethics board members do not exercise sovereign power because they serve in an advisory capacity, the Clerk fails to address the applicability of the other recognized characteristics applicable to public officers. Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017). Accordingly, we do not find that Makula's referendum petition is precluded by the Illinois State Constitution and reject the Clerk's claim that he failed to establish that he had a clear right in need of protection to obtain *mandamus* relief.

¶ 25     The Clerk next argues that Makula also failed to establish the second element to obtain *mandamus* relief. That is, he failed to show that she had a duty to certify his referendum petition. In support, she argues that section 10-8 of the Election Code vests her with the responsibility to determine whether a petition for referendum meets the Code's requirements and that she properly exercised her discretion in finding that Makula's referendum petition did not meet those requirements.

¶ 26     Section 10-8 of the Election Code provides, in pertinent part as follows: "Certificates of nomination and nomination papers, and petitions to submit public questions to a referendum, being filed as required by this Code, and being in apparent conformity with the provisions of this Act, *shall* be deemed valid unless objection thereto is duly made in writing within 5 business days after the last day for filing the certificate of nomination or nomination papers or petition for a public question." (Emphasis added.) 10 ILCS 5/10-8 (West 2018). In determining whether a document is in "apparent conformity" with the law, a local official is limited to reviewing the

face of the document. *Pate*, 2019 IL App (1st) 190449, ¶ 32. That is, an election official may only refuse to certify a public question if the petition contains a fatal legal defect apparent on its face and "may not look outside the petition to determine whether in fact it does comply." *North v. Hinkle*, 295 Ill. App. 3d 84, 88 (1998) (citing *People ex rel. Giese v. Dillon*, 266 Ill. 272 (1914)). Fatal legal defects include, but are not limited to, deficiencies such as a petition being supported by fewer signatures than the number required (*Haymore v. Orr*, 385 Ill. App. 3d 915 (2008)) or the failure of a potential candidate to attach a statement of candidacy to his nomination papers (*North*, 295 Ill. App. 3d at 84).

¶ 27    Here, there is no dispute that Makula's petition was supported by the requisite number of signatures and that no objections were filed opposing it. The Village Clerk, however, argues that she determined that his petition was not in apparent conformity with the law because it sought to accomplish something that electors were not empowered to do. We have already rejected her argument that Makula's petition seeking to change the manner in with the Village's ethics board members were selected was precluded by the Illinois Municipal Code and the Illinois State Constitution. The subject matter of his referendum, did not, on its face seek to accomplish an improper objective and was not deficient. Because the Clerk fails to cite to any other apparent fatal facial legal defects, she was required, pursuant to section 10-8 of the Election Code to certify Makula's petition. 10 ILCS 5/10-8 (West 2018). Makula thus established the second element necessary to obtain *mandamus* relief.

¶ 28    The Clerk does not dispute that she has the requisite authority to comply with the writ and that the third element to obtain *mandamus* relief has been satisfied. Accordingly, we find that Makula established each of the three elements necessary to obtain *mandamus* relief and that the circuit court did not err in entering a judgment of *mandamus*.

¶ 29    CONCLUSION

¶ 30    The judgment of the circuit court is affirmed.  In accordance with this court's April 5, 2021, order, we reiterate that the results on Makula's referendum question may be published once the mandate in the instant case has been issued.  We further reiterate that in the event that the Niles electorate votes to change the manner in which the Niles ethics board members are selected, those positions may be filled in subsequent elections.

¶ 31    Affirmed.